[No. 16822.  Department One.  March 16, 1922.]

WILLIAM CROOKS, *Appellant,* v. W. R. RUST *et al.,*
*Respondents.*[1]

MUNICIPAL CORPORATIONS (443, 469)—STREETS—OBSTRUCTIONS—
CONTRIBUTORY NEGLIGENCE OF PERSON INJURED.  It cannot be said
that an auto driver was guilty of contributory negligence, as a mat-
ter of law, in driving in the night-time between two red lights
thirty feet apart, on the principal thoroughfare of a large city, and
striking the end of a derrick pole extending from a truck parked
at the curb for unloading where a building was under construction,
it appearing that he did not see the pole, which was unlighted and
extended to the center of the street four feet above the surface.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered August 12, 1921,
upon granting a nonsuit, dismissing an action for
damages sustained through an obstruction in a street.
Reversed.

*P. L. Pendleton,* for appellant.

*Shorett, McLaren & Shorett, James B. Murphy,* and
*Ward C. Kumm,* for respondents.

MITCHELL, J.—Appellant sued a number of defend-
ants to recover for personal injuries.  The case has
taken such a course that the only defendant who took
part in the trial and that now remains in the contro-
versy is the Georgetown Transfer Company, a corpor-
ation, respondent here.  The case was tried before a
jury and, at the conclusion of appellant's proof, a non-
suit was granted upon the motion of the transfer com-
pany that there was a failure of proof of any negli-
gence on its part, and that it affirmatively appeared
that the proximate cause of the injuries was the negli-
gence of the plaintiff.

[1]Reported in 205 Pac. 419

Some of the important facts were understood in slightly different ways by the witnesses who testified, but taking the proof tending most strongly to support the judgment, the facts are substantially as follows: Work had been commenced in the construction of the Rust Building, at the northwest corner of Pacific avenue and Eleventh street, in Tacoma. The avenue, the principal thoroughfare of the city, runs north and south, and Eleventh street traverses it at right angles. The avenue is sixty-eight feet wide between curbs and has on it two street car tracks, one on each side of, and near the center of, the avenue. The excavation for the building had been completed. About three o'clock in the morning, while it was yet dark, though a clear dry night, two derrick poles were being unloaded by the respondent into the excavation to be used in construction work. The poles were about eighty or ninety feet long and had been placed on either side of a truck belonging to the respondent, extending about thirty-five feet both to the rear and in front of the truck. The truck had been backed up to the westerly curb of the avenue, some forty or fifty feet north of Eleventh street, and headed in a northeasterly direction, so that the forward ends of the poles extended out to the center of the avenue and were about four feet above the surface of the avenue. Appellant came into collision with one of the poles.

At the time of the accident, it appears that the truck had been at that place about an hour, during which time one of the poles had been raised clear of vehicular traffic, and the workmen engaged in unloading were all on the south side of the truck. There was no one representing the respondent, nor any barrier, situated on the north side of the truck. There was a red light on the surface at the center of the avenue about twenty

feet north of the ends of the poles, and another red light on the surface of the avenue five or six feet from the curb and about due west from the light in the center of the avenue. There was no light or flag upon the poles, and there was a single Presto light in use on the front of the truck as it faced diagonally across the avenue. The cluster street lights were burning. The appellant, driving a Detroit "bug", travelled south, near the center of, but on the right-hand or westerly side of, the avenue, at a speed estimated by the different witnesses of ten to twenty-five miles an hour. He was familiar with the avenue and testified that he was observant as he approached the place at which the accident occurred. He testified that he noticed the red light out in the center of the avenue, also the one near the curb, which he took to be the same as a red light he had on former recent occasions observed at that point on the corner or north end of a temporary wooden structure in front of the Rust Building, erected to protect pedestrians using the sidewalk. Both of his front lights were in use and in good condition, showing the surface of the street for one hundred to one hundred and fifty feet. He testified he did not see the pole until just the moment he ran into it. The top of his car, including the wind shield and steering wheel, were entirely destroyed, and he was severely injured.

In our opinion, the questions in the case were questions for the jury. The appellant ran into an object which, in all reasonable considerations for his safety, might as well have been suspended in the air, as it had for its support a truck situated entirely out of the reach of the lights of his car. The obstruction was situated on the most heavily travelled street of a large city and must necessarily continue as an ob-

struction for a considerable period of time before the unloading was completed. Nor is there anything very unusual in a single red light on the ground in the center of a street. The street was a broad one and the space of about thirty feet between the two red lights was equal to that of an ordinary street. There was nothing in the situation to warrant the conclusion, as a matter of law, that the appellant, who was already familiar with the red light at or near the location of the one near the curb, should, in the exercise of ordinary and reasonable caution and prudence, have considered the two red lights as a warning that the whole of the west side of the avenue was unsafe for travel. As testified to by a policeman, the appellant was the only one travelling on the street at that time, and that he was driving in a proper place and in a proper manner.

Reversed, with directions to grant a new trial.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.