# Staunton

## J. H. WAYNICK v. LAKE WALROND.

September 12, 1930.

Absent, Holt, Hudgins and Gregory, JJ.

*Woods, Chitwood, Coxe & Rogers,* for the plaintiff in error.

*Dillard, Moomaw & Dillard,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

J. H. Waynick, hereafter called the defendant, complains of a judgment in favor of Lake Walrond, an infant who sues by J. L. Walrond, his father and next friend, hereafter called the plaintiff.

The plaintiff, nineteen years old at the time of the trial, was seriously injured under these circumstances: He was riding a motor-cycle, after dark, traveling north on the Hollins road, about a mile from Roanoke, when his machine collided with a truck owned by the defendant, a furniture dealer in Roanoke. The truck, headed south towards Roanoke, was illegally parked on the wrong side of the road, with its tail-board extended, at an angle of forty-five degrees, or less, with the edge of the road. The rear wheel was on the road, and by the weight of the evidence the end of the truck extended half way across the fifteen and one-half foot hard surface roadway. The truck, driven by the servant of the defendant, was at the time occupied by another employee named Jones and the defendant. They had stopped at Shockley's store to make an inquiry as to the residence of one of the defendant's customers for whom they had goods. The truck remained in this position, so obviously improper and dangerous to others, for a period of time estimated by no one at less than five minutes. By one witness at least the period was estimated to be fifteen minutes. It was so dark at the point that Jones, the defendant's helper, lent his flashlight to another boy who was at the time having his motor-cycle filled with gasoline from a pump located in front of the store. The headlights of the truck were dimmed, were

facing south, and were several feet away from the edge of the hard surface roadway and not shining on it. The plaintiff, with his motor-cycle properly equipped; traveling at a speed estimated by several disinterested witnesses to be from twenty to twenty-five miles an hour; traveling on the right-hand side of the road going north, observed approaching him from the opposite direction the bright lights of a Chevrolet car, traveling probably at the same rate of speed. He also observed at about the same time the dimmed lights of the truck on his right but off of the highway, and quite naturally thinking that this was no dangerous obstruction on the roadway gave his attention to the approaching automobile. His vision was dimmed by the headlights of that car, and he testified that he was unable to see and did not know of the dangerous position of the truck across the pathway on the wrong side of the hard surface of the road until he was within fifteen feet of it. When he attempted to swerve to the left so as to avoid a collision, he struck the edge of the truck, which knocked his hand from the handle-bar of the motor-cycle, causing him to lose control of it and throwing him towards the approaching automobile. He then struck the side of the automobile, was thrown in a ditch by the road-side and very seriously and permanently injured.

There are other details but there is no substantial contradiction of the facts we have stated, unless perhaps the statements of the driver of the truck and Jones, the helper, that they estimated the speed of the motor-cycle at forty-five miles per hour. It is, however, clear that they were paying scant attention to it.

The learned counsel for the defendant inserted this frank caveat in their very able brief: "Counsel for the defendant realize that in the foregoing pages they have not entirely succeeded in making a judicial statement of the facts of the case. The broad issues submitted to the jury under

the very general instructions of the court make it difficult to say just what facts were determined by the verdict. In view of the plaintiff's own admissions, by which he is necessarily bound, only one fact can with certainty be said to have been definitely established, namely, that the jury felt a great deal of sympathy for the crippled young plaintiff."

The entire argument for the defendant on the facts is based upon the contention that the testimony of the plaintiff himself shows that he was guilty of contributory negligence, "in not stopping his motor-cycle before striking the truck when he was admittedly apprised by the position and angle of its headlights of its presence on the road just where he was due to meet the Chevrolet."

The plaintiff, however, testified repeatedly that the reason he did not stop or reduce his speed was because he felt confident that there was no obstruction on his, the right, side of the highway between him and the approaching Chevrolet. He justifies this by claiming that the failure to see any red light in his pathway and on his side of the road reassured him. A fair construction of his testimony is that the white lights of the truck facing him, outside of the highway, misled him into supposing that no automobile in that position would have the rear part of its body extending half way over the roadway, and that his vision was dimmed by the approaching Chevrolet which seemed to him to be the only source of danger. These statements are not inherently incredible, indicate nothing physically impossible, and his conclusions, from apparent facts, are reasonable. The basis for the untenable claim of defendant was the replies to these leading questions of astute counsel on a rigid and prolonged cross-examination. There is much more of it, but we reproduce only so much as is relied on and as we deem necessary in order to understand the point:

"Q. Now you say you saw those lights from the truck. Was that before your vision was dimmed?

"A. There were several cars in there, I could not say.

"Q. You don't know about that?

"A. No, sir.

"Q. You saw the lights from the truck but you don't know whether it was before or after you got dimmed.

"(No answer.)

"Q. When you saw the lights from the truck you just assumed that the way was clear?

"A. Sure; I didn't think anybody would leave a great long truck like that sticking across the road.

\* \* \* \* \* \* \* \* \* \*

"Q. You saw the lights you said, and they' were about a forty-five degree angle to the road?

"A. Yes, sir.

"Q. And you knew that whatever projected that light was something setting on an angle of forty-five degrees?

"A. Yes, sir.

"Q. You could see where the light started and that showed you where the front end of the truck was, didn't it?

"A. I didn't know it was a truck.

"Q. The front end of whatever was making those lights—you say there were two lights?

"A. Yes, sir.

"Q. You knew there was the front end of some kind of motor vehicle that was setting there?

"A. Yes, sir.

"Q. You knew where the front end of it was, didn't you?

"A. Sure.

"Q. You knew what angle it was across the road, didn't you?

"A. I didn't know what angle it was before I got there.

"Q. You say the lights were shining at a forty-five degree angle?

"A. Yes, sir.

"Q. And if the lights were shining at a forty-five degree angle to the road, whatever was making those lights must have been setting at an angle of forty-five degrees to the road, must it not. That is true, isn't it?

"A. Yes, sir.

"Q. How fast were you going?

"A. Between twenty and twenty-five miles an hour.

"Q. You just came at the same speed and you did not speed up any before you got to the truck.

"A. No, sir; I didn't shut down until I got as far as from here to the door, when I seen the truck, or maybe a little further. * * *

"Q. About fifteen feet, would you say that?

"A. I don't know. I tried to dodge it and my handle-bar hit the truck and when I hit the truck it throwed my motor-cycle wide open and I hit the Chevrolet.

"Q. What part of the truck did you strike?

"A. I don't know, I couldn't tell you what part I struck. It bruised my hand and cut my hand there (indicating), and it kind of mashed the handle-bar in and that throwed it this way and I pulled it back and I lost control of it and you couldn't have went through there.

 *   *   *   *   *   *   *   *   *   *

"Q. You knew you could only see a very limited distance in front of you?

"A. Yes, sir.

"Q. I will not go over that again because you have just repeated what you said before. You also knew that an automobile or truck was parked somewhere along the edge of that road, didn't you?

"A. Yes, sir.

"Q. And knowing all that, you made no effort to stop your motor-cycle whatever, did you?

"A. I didn't think there was any use, I thought the road was clear and I didn't want to stop."

Based upon that "Yes, sir" to the suggestion of the cross-examiner, that "he knew that an automobile or truck was parked somewhere along the edge of that road," the attorney for the defendant, in his reply brief, thus expresses his contention which is frequently repeated in different language:

"In dealing with the questions of fact, it has been shown that the plaintiff saw the two front lights of the truck, 'along the edge of the road.' He knew its approximate position and angle with respect to the road. He also knew that he would meet the oncoming Chevrolet at about that point. He thought that the parked vehicle would be very short, because he assumed that a parked vehicle would not be left standing with its rear end standing out far on the macadam. By momentarily checking his speed, he could have ascertained if such an assumption was justified. But he 'didn't want to stop.' He took a chance—gambled with safety—and lost. Could proof of negligence be clearer?"

The answer to this is that doubtless negligence under such conditions would be clear, but manifestly the evidence does not justify the assumptions made. The words "along the edge of the road" should not be construed to be the words of the witness. They must be considered in connection with the conceded facts that the front of the machine was not on but off of the road, and his oft-repeated statement that the front lights were off of the road and not on it, and that they were dimly shining away from the road and threw no light upon it. The contention assumes that the plaintiff knew the approximate position and angle of the truck with respect to the road, when the fact is that he also said he knew nothing in the world about the angle until he reached the place, and in fairness it should be said that he could not have known it accurately as he approached, under the circumstances.

Based upon these answers the contention is that the plaintiff admits, and is conclusively bound by the admission, that he knew the precise physical situation of the truck and his impending danger therefrom. The premises are insufficient to support the conclusion. To sustain it would be to ignore the plaintiff's repeated denials of any such knowledge; to impose upon him the duty of extraordinary foresight and care, and to attribute to him the same perfection of logic now expressed by the defendant's attorney after the event; and all this when the plaintiff had only a few seconds in which to see all, know all and realize all that we, after the occurrence, now know resulted primarily from the defendant's inexcusable negligence. By contrast, we observe that the defendant himself, while sitting in his own truck at the point of the collision, testified that he did not then know that the rear end of it projected over the roadway.

Of course the statements as to the precise angle of forty-five degrees upon which the truck was standing with reference to the edge of the highway is merely the estimate of the witnesses, as to which all of them do not agree. Then there is the assumption from these answers that the plaintiff also knew, or is to be charged with knowledge, that the dim lights which he saw came from a truck which was over nineteen feet long, and that knowing the angle he must have known that the highway was obstructed. When we eliminate this contention, which we think is unsound because it is based upon an improper construction of the testimony, there remains nothing of substance in the evidence from which the jury could have fairly inferred that the plaintiff was guilty of contributory negligence. He was driving on the right side of the road, at a reasonable speed; he was misled by the location of the faint lights of the truck off of and shining dimly away from the highway; his vision was dimmed by and his attention properly, indeed of

necessity, directed to the bright lights of the approaching automobile.

The gross negligence of the defendant in parking his automobile on a dark night and on the wrong side of the road—a road which the testimony shows has a very dense traffic—constitutes the negligence which was the proximate cause of the plaintiff's injury.

The recital of these facts, as it seems to us, determines this case in favor of the plaintiff, but in view of some of the other very earnest contentions made for the defendant, we shall pursue the matter a little further.

■ The case has no peculiar features other than that the precise facts of no two cases are ever precisely alike. There is nothing which calls for any re-examination or restatement of the controlling legal principles. Obviously, as it seems to us, the substantive question in the case was whether or not the plaintiff's recovery could be defeated because of his contributory negligence. This because the original negligence of the defendant is apparent and is frankly conceded. The defendant cannot escape liability unless there was negligence on the part of the plaintiff which contributed to his injury; and the burden rests upon the defendant to show this contributory negligence by a preponderance of the evidence. So far from doing so, as we understand the evidence, the most favorable view which could possibly be taken for the defendant is that it was a jury question. That precise question was fairly submitted to the jury by the instruction granted on motion both of the plaintiff and of the defendant, and assuming as we do that the jury understood those instructions, their verdict is conclusive. As we construe the testimony, had they found the plaintiff guilty of contributory negligence, their verdict would have been plainly against its weight.

The other question raised by the instructions is more difficult to dispose of. The plaintiff alleged that his injury

was caused by the wilful and wanton negligence of the defendant, and the trial court gave these three instructions over the objection of the defendant:

"6—The court instructs the jury that to establish wilfulness the following must appear:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

"(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

"(3) The omission to use such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another."

"7—The court instructs the jury that if you believe from a preponderance of the evidence that the defendant was guilty of an act of wantonness, that is, that the defendant, or his servant acting for him in the premises, was conscious of the conduct which caused the injury (if such conduct did cause the injury), and conscious, from his knowledge of existing conditions, that injury would likely, or probably, result from such conduct or omission to act, and, with reckless indifference to consequences, he consciously and intentionally did the wrongful act or omitted to do or discharge some known duty in the premises which was the direct and proximate cause of the injury to the plaintiff, then the plaintiff may recover, whether said plaintiff was exercising ordinary care at the time of his injury, or whether he was guilty of ordinary negligence (not wilful or wanton acts of misconduct) which contributed to his injury."

"8—The court instructs the jury that if you believe from a preponderance of the evidence that the injury to the plaintiff was the direct and proximate result of a wilful, or wanton act of negligence on the part of the defendant, and that the plaintiff was not guilty of any wilful or wanton

negligence, then the plea of contributory negligence cannot be relied upon by the defendant to defeat a recovery."

It appears then that the jury having been, as it appears to us, properly instructed in every other respect, were further instructed (instructions 7 and 8) that if they believed from a preponderance of the evidence that the defendant was guilty of wanton negligence, and with reckless indifference to consequences, consciously and intentionally did the wrongful act which caused the injury to the plaintiff, he was nevertheless liable, even though the plaintiff was guilty of contributory negligence, unless the plaintiff himself was also guilty of wilful or wanton negligence—that is to say, that the the bare contributory negligence of the plaintiff would not defeat his recovery if the defendant had been guilty of wanton negligence and the plaintiff had not.

That this is the law in some jurisdictions may be conceded (*Bentson* v. *Brown*, 186 Wis. 629, 203 N. W., 380, 38 A. L. R. 1417, note), but save in some occasional instances under statutes so providing, the doctrine of comparative negligence has never obtained in this jurisdiction.

It is held in Michigan that gross negligence, in the sense of great or much negligence, has no place in the jurisprudence of a State in which the doctrine of comparative negligence is not recognized. *Gibbard* v. *Cursan*, 225 Mich. 311, 196 N. W. 398; *Union Trust Co.* v. *Detroit, etc., R. Co.*, 239 Mich. 97, 214 N. W. 166, 66 A. L. R. 1517.

We are unwilling now to say that no case can possibly arise in which such instructions might be proper. We are of opinion, however, that the trial court should not have accepted that rule under the particular facts here shown. That the negligence of the defendant was gross seems to us apparent, but that the evidence is sufficient to support a finding that it was wilful and wanton, or committed with a reckless disregard of the consequences, is not apparent. True it is that the court did not so hold,

but merely submitted that question to the jury to be determined from the facts shown. In this we think the court committed an error, and that the case should have been submitted to the jury merely to consider whether or not the plaintiff's action should be defeated because of his own contributory negligence. We hold, however, that this error is not of sufficient consequence to justify a reversal of the case.

Reverting to the actualities of this case, it seems to us that had the court refused these instruction, as to wilful and wanton negligence, nevertheless there could have been but one proper verdict, and that a verdict in favor of the plaintiff—this, as has been indicated, because the defendant's negligence as the proximate cause of the injury is apparent; that the defendant has failed to carry the burden of showing by a preponderance of the evidence any negligence of the plaintiff which should bar his recovery; and so that the case has been properly decided. It is unnecessary to speculate about possibilities because the certainties of this case settle it. Appellate courts sit to correct substantial rather than fanciful errors.

For the reasons indicated we are of opinion to affirm the judgment.

*Affirmed.*