BARD *v.* BAKER.

1. AUTOMOBILES—NEGLIGENCE—IMPUTATION TO ADULT GUEST PAS-
SENGERS.

In action by wife, not a minor, for injuries sustained while a
passenger in car driven by her husband, his negligence in
driving the car is imputable to her.

2. SAME—TRUCKS—NEGLIGENCE—EXCESS WIDTH OF LOAD.

Defendants who operated truck on public highways with load in
excess of 96 inches in width *held,* guilty of negligence in violat-
ing terms of statute prohibiting loads in excess of such width
(1 Comp. Laws 1929, § 4759, as amended by Act No. 253, Pub.
Acts 1933).

3. SAME—DANGERS TO GUARD AGAINST.

Only danger against which motorist is bound to guard is what he,
as a careful person, sees or should see.

4. SAME — NEGLIGENCE — QUESTION OF FACT — ASSURED CLEAR DIS-
TANCE AHEAD.

Statute providing that "no person shall drive any vehicle upon a
highway at a speed greater than will permit him to bring it to
a stop within the assured clear distance ahead" is construed
as not requiring that a person be held guilty of contributory
negligence as a matter of law in failing to see an object on the
highway which was undiscernible to a person approaching the
same in the exercise of ordinary care (1 Comp. Laws 1929,
§ 4697, as amended by Act No. 119, Pub. Acts 1933).

5. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT—LIGHTS—
OVERHANGING LOAD IN EXCESS OF STATUTORY WIDTH.

Question of contributory negligence of deceased motorist *held,*
for jury where record shows he had been traveling 25 miles an
hour and had begun to slow down as he approached intersec-
tion where *defendants'* dump trucks, loaded with wooden road
mats to a width in excess of that permitted by statute and

from which red flag hung so that lowest part of flag and mats was more than 42 inches from pavement, the height the direct rays of lights on deceased's car were permitted to shine, since deceased is only presumed to have seen that which statute requires an ordinarily careful person to have seen and if, assuming all other lights were out, lights on decedent's car would not have apprised him of the overhanging. mats he would not be guilty of contributory negligence as a matter of law (1 Comp. Laws 1929, § 4738 [b], as amended by Act No. 59, Pub. Acts 1931, § 4759, as amended by Act No. 253, Pub. Acts 1933).

6. SAME—TRUCKS—NIGHTTIME—LOADING—PARKING.

While deceased motorist who approached parked truck at night should have observed it, he had right to assume it was loaded and parked in compliance with statutes (1 Comp. Laws 1929, § 4759, as amended by Act No. 253, Pub. Acts 1933).

WIEST, C. J., and BUTZEL and POTTER, JJ., dissenting.

Appeal from Gratiot; Searl (Kelly S.), J. Submitted October 13, 1937. (Docket No. 111, Calendar No. 39,646.) Decided February 25, 1938. Rehearing denied April 4, 1938.

Case by Jennie Bard against John Baker and Amos Baker, copartners doing business as Baker & Son, for personal injuries sustained while riding in a motor vehicle which collided with overhanging load on defendants' truck. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Montigel & Knorr* (*J. David Sullivan,* of counsel), for plaintiff.

*Charles H. Goggin* and *Robert H. Baker,* for defendants.

SHARPE, J. At about the hour of 6 p. m., on the evening of December 10, 1935, Byron Bard and wife, the plaintiff herein, were traveling south in a 1926 two-door Buick sedan on the westerly side of a gravelled highway known as 555. On the same day

John Baker, one of the defendants, took two truck
drivers and a Dodge truck and went to Remus where
they got another truck and brought back in the
trucks two loads of six road mats for use on a high-
way construction job. The mats are made of two-
inch elm planks, three-ply, put together crosswise
to make them firm enough to hold heavy machinery
that may have occasion to pass over them. The mats
when constructed are six inches thick, four feet wide
and 14 to 16 feet long. The trucks were one and
one-half ton chassis, equipped with dump bodies, six
feet wide and eight feet long; the top of the dump
box was five feet from the ground. Two 14- and
one 16-foot mats were loaded on top of each other
crosswise of the dump bodies and just back of the
cab of each truck. The trucks were loaded heavier
on the right side and a red flag, one and one-half feet
square, was fastened at the left front end of the
lower mat on each truck. The lowest part of the
mat and end of the flag were more than 42 inches
from the pavement. The truck arrived at the place
where the accident happened shortly before 6 p. m.
Mr. Baker drove on ahead to the intersection. He
parked his car about 15 feet west of 555 and in the
center of M-46 facing the southeast. The Chevrolet
truck next arrived and was backed off of highway
555 and stopped about 30 feet east of the east shoul-
der of 555 and on the south line of the right of way
of M-46. It stood facing nearly west. The Dodge
truck next arrived and stopped at the south line of
the right of way of M-46, the right wheels being
about eight inches from the east shoulder of 555.
The lights on all of these vehicles were turned on.
The Dodge truck was so located that the lights of
the car and truck illuminated both sides of the
truck. The Bards had been visiting at the home of

plaintiff's relatives who lived about one mile north of the intersection. They left there as it was growing dark, turned on their lights and eventually proceeded south on 555. They were traveling about 25 miles per hour and slowed up somewhat as they approached the intersection. They crossed the intersection, missed the dump body of the truck and crashed into the mats which extended about one and one-half feet into the westerly half of 555. The force of the impact slid the mats on the left side of the truck one and one-half feet toward the rear end of the dump body. The windshield and the entire top and body of the Bard car above the steering wheel was sheared off. Bard's body was found in the middle of the road about 100 feet south of the Dodge truck and the automobile came to a stop against a large stone 219 feet south of the truck. Mr. Bard was killed and plaintiff received serious scalp wounds and other injuries.

Plaintiff brought suit for injuries and at the close of her case, the defense moved the court to direct a verdict on the ground that the driver of the automobile, in which plaintiff was riding when she was injured, was guilty of contributory negligence. Decision on this motion was reserved under the statute and the cause submitted to the jury who thereupon found in favor of plaintiff. Defendants then made a motion for judgment *non obstante veredicto* and upon the denial of this motion, they appealed.

It is conceded by all parties that plaintiff is not a minor and that the negligence of her husband, the driver of the car, is imputed to her; that 1 Comp. Laws 1929, § 4759, as amended by Act No. 253, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4759), provides that the width of the load over all, with certain exceptions not applicable to this case, shall not ex-

ceed 96 inches; and that as a result of the defendants' failure to comply with the terms of this statute, they were guilty of negligence in violating this statute. See *Beckman* v. *Baraga Township School District,* 271 Mich. 195.

Defendants rely upon 1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4697), which provides that, "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead" and cite the following cases to the effect that if a driver is blinded by glaring lights he must stop: *Ott* v. *Wilson,* 216 Mich. 499; *Spencer* v. *Taylor,* 219 Mich. 110; *Holsaple* v. *Superintendents of Poor of Menominee County,* 232 Mich. 603; *Ruth* v. *Vroom,* 245 Mich. 88 (62 A. L. R. 1528); *Bielecki* v. *United Trucking Service,* 247 Mich. 661; *Elrich* v. *Schwaderer,* 251 Mich. 33; *Thompson* v. *Southern Mich. Transportation Co.,* 261 Mich. 440; *Russell* v. *Szczawinski,* 268 Mich. 112.

We have frequently had the above mentioned statute under consideration. In *Martin* v. *J. A. Mercier Co.,* 255 Mich. 587 (78 A. L. R. 520), a motorist while it was misty and dark had been driving along a road open to traffic and drove into an excavation not marked with warning lights. We there said:

"The only danger against which he was bound to guard was what he saw or should have seen.

"The rule that a driver must see objects and be able to stop within the range of his lights, applied to things on the road, does not apply to holes in the road. A hole often melts into the road so it cannot be distinguished from the surface except at short range. Whether and when a hole or excavation would be noticed by a careful driver, especially on

a misty and dark morning, necessarily is so uncertain and dependent upon circumstances that, with possible exceptions, it is an issue of fact.''

In *Marek* v. *City of Alpena*, 258 Mich. 637, a motorist ran into a bump in the highway. We there said:

''A violation of the rule that a driver must drive his car at such a speed that he can stop within the assured clear distance ahead does not preclude his recovery for injuries in a case where they are caused by running into a hole or bump on the road. The assured clear distance rule is applied when there is collision with trucks or other objects not a part of the road.''

In *Garrison* v. *City of Detroit*, 270 Mich. 237, a motorist while driving on First street in the city of Detroit at a speed of 20 miles per hour or less struck an unlighted traffic signal post. The signal device consisted of a cement base, three feet in diameter and three feet high, supporting a six-inch steel post bearing guard lights five feet above the pavement and traffic lights nine feet high. In discussing the ''rule of safety'' as found in *Russell* v. *Szczawinski, supra*, and *Thompson* v. *Southern Michigan Transportation Co., supra*, we said:

''The cases dealt with large objects, such as other motor vehicles, easily seen, and on the open road. A driver must anticipate such objects, lighted or unlighted, carefully or negligently driven or parked, and guard against collision with them. He must see such obstruction as a careful person would have seen.

''It would convert a rule of safety into a rule of danger to hold that drivers in a city, subject to distraction caused by pedestrians and vehicles, must anticipate, at their peril, so unusual a thing as an unlighted traffic signal in the center of a street in-

tersection. When such a device is maintained, the cited rule of safety is not applicable but the question of the driver's negligence becomes an issue of fact under the circumstances.''

Plaintiff has cited the following cases from other jurisdictions: *Whitworth* v. *Riley,* 132 Okla. 72 (269 Pac. 350, 59 A. L. R. 584); *Waynick* v. *Walrond,* 155 Va. 400 (154 S. E. 522, 70 A. L. R. 1014); *Crooks* v. *Rust,* 119 Wash. 154 (205 Pac. 419); *Dorris* v. *Bridgman & Co.,* 289 Pa. 533 (137 Atl. 609). And we have examined *Ross* v. *Hoffman* (Mo. App.), 269 S. W. 679; *Mechler* v. *McMahon,* 184 Minn. 476 (239 N. W. 605); *Whitlatch* v. *City of Iowa Falls,* 199 Iowa, 73 (201 N. W. 83); *Wicker* v. *North States Construction Co.,* 183 Minn. 79 (235 N. W. 630); *Kadlec* v. *Al. Johnson Construction Co.,* 217 Iowa, 299 (252 N. W. 103); *Baldwin* v. *City of Norwalk,* 96 Conn. 1 (112 Atl. 660).

In the cases cited from other jurisdictions the ''rule of safety'' is not statutory as in Michigan and these cases are not authority for the claims made by plaintiff, they merely show the tendency of courts of other jurisdictions to adopt a more liberal rule than is followed in Michigan. Our court in placing a reasonable construction upon this statute has held that a person should not be guilty of contributory negligence as a matter of law in failing to see an object which was undiscernible to a person approaching the same in the exercise of ordinary care.

In the case at bar, plaintiff's driver was killed and we do not know what he saw as he approached the truck. The record shows that he was traveling at the rate of 25 miles per hour and began to slow down as he crossed the intersection; that the lowest part of the mats and flag were more than 42 inches above the pavement, which is the height the ''main

bright portion of the head lamp beams" of Bard's car were permitted by law to shine. 1 Comp. Laws 1929, § 4738 (b), as amended by Act No. 59, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4738 [b]). In our opinion plaintiff's driver should have seen defendants' lighted truck parked on its proper side of the road, but he had a right to assume that it was loaded and parked in compliance with the laws of the State of Michigan; and whether or not plaintiff's driver failed to see the protruding mats or failed to see them in time to avoid a collision with them presents a jury question.

The judgment of the trial court is affirmed. Plaintiff may recover costs.

BUSHNELL, CHANDLER, and NORTH, JJ., concurred with SHARPE, J.

POTTER, J. (*dissenting*). Plaintiff and her husband, about 5:45 p. m., December 10, 1935, were traveling south in an automobile on the westerly side of highway No. 555, approaching what was to be new highway M-46 then under construction by defendants, a copartnership. Plaintiff was returning from the home of her mother and stepfather one-half mile north and west of the intersection of highway No. 555 with new M-46. Plaintiff and her husband had talked about the new road, saw automobiles of workmen parked on highway No. 555 on the way to her mother's home in the morning. Plaintiff's husband discussed the highway with Mr. La-Voy, a garage man at Riverdale, that morning. On the morning of December 10, 1935, John Baker arranged and managed the moving of six mats from Remus to the junction of new M-46 with No. 555. These mats, used for footings for excavating machinery working in soft ground, were made of plank two inches thick, three-ply, put crosswise, to hold

heavy machines so they would not sink in the muck. They were approximately six inches thick, four feet wide, and 14 and 16 feet long, and weighed between 1,500 and 2,000 pounds apiece. The trucks which carried them were 1½-ton trucks equipped with dump bodies about six feet wide and eight feet long. Two 14-foot mats and one 16-foot mat were loaded on top of each other crosswise of the dump bodies just back of the cab of each truck. About one and one-half feet more of these mats was overhanding on the right side than on the left. A red flag about one and one-half feet square was fastened at the left front end of the lower mat on each truck. Two trucks were used in moving them. One Marzolf drove a Dodge truck and one Daymon drove a Chevrolet truck. On the way from Remus, Baker drove ahead of the trucks and at Riverdale met two of his men, Viswat and Compson, whom he picked up and took along with him to the intersection of new M-46 and No. 555 to help unload the trucks. He came from the south, parked his automobile about 15 feet west of highway No. 555 in the center of the right of way of new M-46, facing the southeast. The Chevrolet truck arrived first, was backed off the highway and stopped about 30 feet east of the east shoulder of highway No. 555, on the south line of the right of way of new M-46 which runs substantially east and west, preparatory to unloading. This truck stood facing the northwest. While it was unloading, the Dodge truck stopped at the south line of the right of way of new M-46. The lights on all vehicles were turned on. The Dodge truck was so located that both sides were illuminated by the automobile on either side. The driver of the Dodge truck went to help unload the Chevrolet truck and about three minutes afterward plaintiff, riding with her husband

in his automobile coming from the north, drove across the intersection of highway No. 555 with new M-46 at about 25 miles an hour, missed the dump body of the Dodge truck, crashed into the mats on it with such force as to slide the mats on the left side of the truck one and one-half feet toward the rear end of the dump body. The windshield and top of the body of the automobile in which plaintiff was riding were sheared off and came to rest in the center of the road about 50 feet south of the Dodge truck. The body of plaintiff's husband was found in the middle of the road about 100 feet south of the Dodge truck. His automobile, after the impact, went up a five-foot grade and over a two-foot embankment and landed against a large stone in the fence 219 feet south of the Dodge truck. Plaintiff's husband was killed and plaintiff seriously injured. Plaintiff brought suit to recover for the injuries she suffered.

The lower part of the mats and the end of the red flag were more than 42 inches above the pavement. Plaintiff testified she was blinded by the lights from the truck, but there was no testimony as to what plaintiff's husband saw or did not see. Plaintiff and her husband were engaged in conversation in relation to some wood he had purchased from her stepfather until the moment of impact. Defendants, at the close of plaintiff's case, moved for a directed verdict upon the ground plaintiff's husband, driver of the automobile in which she was riding at the time of injury, was guilty of contributory negligence. The court reserved decision under the statute and submitted the case to the jury which found for plaintiff. A motion for judgment notwithstanding the verdict was made by defendants and denied

by the court, judgment entered, and defendants appeal.

Plaintiff relies on Act No. 253, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4759), to establish defendants' negligence. The act provides with certain exceptions not here material that "No motor vehicle * * * hereafter operated upon the public highways of this State shall have a gauge * * * more than ninety-six inches wide, over all including load." It is conceded the mats were 14 and 16 feet long and the load was wider than permitted by statute.

"The statute does not declare a rule of reasonable care in loading. It prescribes a mandatory condition of the use of the highway. It is incumbent on the driver, at his peril, to comply with the statute at all times." *Beckman* v. *Baraga Township School District,* 271 Mich. 195.

Defendants' negligence is established.

"No person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." 1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4697).

The negligence, if any, of the driver of the automobile in which plaintiff was riding is imputed to her. *Holsaple* v. *Superintendents of Poor of Menominee County,* 232 Mich. 603. Any want of due care or any failure as to a specific duty imposed by statute on the part of the plaintiff, if any, however slight, which contributed to the accident would bar recovery. *Gleason* v. *Lowe,* 232 Mich. 300.

"If there is negligence and contributory negligence then there is no remedy." *Bielecki* v. *United Trucking Service,* 247 Mich. 661.

In *Ruth* v. *Vroom,* 245 Mich. 88 (62 A. L. R. 1528), the court in passing upon the "assured clear distance" rule, said:

"The rule adopted by this court does not raise merely a rebuttable presumption of negligence. It is a rule of safety. * * * It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range."

See, also, *Cook* v. *City of Otsego,* 282 Mich. 248, and cases cited.

It is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it. *Spencer* v. *Taylor,* 219 Mich. 110; *Gleason* v. *Lowe, supra; Diederichs* v. *Duke,* 234 Mich. 136; *Lett* v. *Summerfield & Hecht,* 239 Mich. 699.

"We do not think the rule should be weakened by engrafting exceptions on it or modifying it. Its observance bespeaks the safety of human life and limb and of property. Had it been observed on the night in question, this unfortunate accident would not have happened." *Lett* v. *Summerfield & Hecht, supra.*

If the vision of the driver of the automobile in which plaintiff was riding was obscured by lights from oncoming cars, or if the lights on his own automobile did not illuminate the range of his vision so that he was deceived by appearances, then he was guilty of contributory negligence imputable to plain-

tiff. If the driver of the automobile in which plaintiff was riding saw the projecting mats and did not bring his automobile to a stop but ran into them, that would be contributory negligence as a matter of law.

Plaintiff contends the lower court properly denied defendants' motion, and cites *Minks* v. *Stenberg,* 217 Iowa, 119 (250 N. W. 883); *Whitworth* v. *Riley,* 132 Okla. 72 (269 Pac. 350, 59 A. L. R. 584); *Waynick* v. *Walrond,* 155 Va. 400 (154 S. E. 522, 70 A. L. R. 1014); *Crooks* v. *Rust,* 119 Wash. 154 (205 Pac. 419); *Dorris* v. *Bridgman & Co.,* 296 Pa. 198 (145 Atl. 827). In none of these cases was an "assured clear distance" statute involved. *Caudle* v. *Zenor,* 217 Iowa, 77 (251 N. W. 69), involved an "assured clear distance" statute, but exceptions have been engrafted on it.

Act No. 59, § 46 (b), Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4738 [b]), is substantially the same as 1 Comp. Laws 1929, § 4738 (b), which is the same as Act No. 318, § 46 (b), Pub. Acts 1927. This provision in relation to lights on motor vehicles first appeared in Act No. 22, Pub. Acts 1921 (1st Ex. Sess.), and was probably repealed by Act No. 3, Pub. Acts 1921 (2d Ex. Sess.). Act No. 59, § 46 (b), Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4738 [b]), provides:

"Head lamps and auxiliary driving lamps shall be so aimed and used upon approaching an oncoming vehicle that they do not project a glaring or dazzling light into the eyes of the approaching driver. Such lamps shall be deemed to comply with this provision prohibiting glaring and dazzling lights if substantially none of the main bright portion of the beam used in approaching an oncoming car is directed to the left of the vertical plane through the axis of the left head lamp and parallel to the longitudinal axis of the vehicle and above the

horizontal plane passing through the lamp centers parallel to the level road upon which the loaded vehicle stands, and in no case higher than forty-two inches, seventy-five feet ahead of the vehicle.''

The 1927 act above referred to provides:

''Head lamps shall be deemed to comply with the foregoing provisions prohibiting glaring and dazzling lights if none of the main bright portion of the head lamp beams rises above a horizontal plane passing through the lamp centers parallel to the level road upon which the loaded vehicle stands and in no case higher than forty-two inches, seventy-five feet ahead of the vehicle.''

Plaintiff argues that though her husband was negligent in violating the ''assured clear distance'' rule, this was not the proximate cause of the accident, because these mats were more than 42 inches above the level of the roadbed upon which the trucks were standing and because by statute the rays of light from the automobile of plaintiff's husband were not permitted to be more than 42 inches above the ground, 75 feet in front thereof. The statute provides ''if substantially none of the main bright portion of the beam used in approaching an oncoming car'' rises higher than 42 inches, at 75 feet in front of the automobile. The statute does not say no beam is to be above 42 inches, but that substantially none of the main bright portion should be. 1 Comp. Laws 1929, § 4738 (a), as amended by Act No. 59, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4738), requires that automobile lights be so adjusted that when approaching an oncoming vehicle they will be sufficient to render clearly discernible a person 75 feet ahead. Both provisions of the statute should be permitted to stand and be construed

together.  Section 4738 (b), as amended by Act No. 59, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4738), does not mean that only three and one-half feet of a person need be clearly discernible while subsection (a) says the whole person shall be discernible. While one portion of the statute provides that substantially none of the main bright portion of the beam is to be above 42 inches, yet some of the rays of light from the automobile must necessarily be above 42 inches if subsection (a) of the statute is to mean anything.  Had plaintiff's husband been watching and had he not been blinded by the glare of defendants' headlights, he would have been able to have seen the mats if the lights on his own automobile were in proper condition.  We do not agree with the construction placed upon this statute by the trial court.

In *Sellon* v. *Tanner,* 252 Mich. 231, an automobile in which plaintiff was riding as a guest of the driver was proceeding north on the east side of the pavement on south Cedar street, in the city of Lansing, about 5:30 p. m., December 27, 1928, and at the intersection of Greenlawn street collided with a truck which had backed from Greenlawn street into the path of the northbound traffic on Cedar street and plaintiff was injured and brought suit against the owner.  We held defendant was entitled to a directed verdict on the ground of contributory negligence on the part of plaintiff's driver.  It was said:

"Defendant's truck backed into the intersection with the body of the truck and an overhanging timber reaching quite to the center of the pavement and directly across the path of the automobile in which plaintiff was riding.  *  *  *  Plaintiff did not see the truck because he was looking at approaching traffic on the opposite side of the pavement."

Defendant was negligent in backing his truck as shown in that case. It was said:

"It is negligence, as a matter of law, for the driver of a car to proceed over a highway without looking to see whether he can do so in safety. Lights on cars are intended to disclose the way ahead after dark, and, if they fail to do so for any reason, it is a warning to the driver not to proceed without having vision of the way."

The record in that case shows there were lights on the back of the cab of the truck seven and one-half feet above the ground, the platform upon which the timbers were riding was about three and one-half feet from the top of the cab, which would bring them at least 42 inches from the ground. As in this case, the automobile was demolished above the cowl and undamaged below by the impact of the collision. When this case was decided, Act No. 318, § 46 (b), Pub. Acts 1927, was in effect.

The rule in *Sellon* v. *Tanner, supra,* was approved in *Fraley* v. *J. Calvert's Sons,* 266 Mich. 460, and *Johnson* v. *Fremont Canning Co.,* 270 Mich. 524.

The trial court should have entered judgment for defendants.

Judgment should be reversed and cause remanded for entry of judgment notwithstanding the verdict, with costs to defendants.

WIEST, C. J., and BUTZEL, J., concurred with POTTER, J. FEAD, J., took no part in this decision.