NORWICH UNION FIRE INSURANCE SOCIETY., LTD., v.
GLOBE CONSTRUCTION CO.

AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT FOR JURY—EXCAVATION IN HIGHWAY—WARNING FLARES.
  Question of contributory negligence of driver of 30-foot tractor and semi-trailer loaded with about 15 tons of paper who had been travelling down hill at a reasonable rate of speed at night some 60 feet behind a preceding car which stopped suddenly and turned to the right immediately before reaching recently-excavated hole 38″ deep and 67′ long in highway and who turned left and passed through picket fence into excavation *held*, question of fact for jury, the testimony being conflicting as to whether there were flares at the near edge of the excavation.

NORTH, C. J., and SHARPE, J., dissenting.

Contributory negligence of plaintiff sufficient to bar recovery, see 2 Restatement, Torts, § 476, also § 475, comment a; causal relation between harm. and negligence, §§ 465, 467; contributory negligence defined, § 463.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 9, 1944. (Docket No. 57, Calendar No. 42,780.) Decided October 11, 1944.

Case by Norwich Union Fire Insurance Society, Limited, a foreign corporation, assignee and subrogee of McNamara Motor Express, Incorporated, a Michigan corporation, and McNamara Motor Express, Incorporated, against Globe Construction Company, a corporation, for damages sustained when plaintiff's truck was driven into an excavation. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Mason & Stratton,* for plaintiff.

*Dwight W. Fistler,* for defendant.

BUSHNELL, J. Shortly before midnight on July 22, 1942, Harold Carter, an employee of plaintiff McNamara Motor Express, Inc., a common carrier of freight between Kalamazoo and Chicago, left the company's terminal in Kalamazoo with a 30-foot tractor and semi-trailer loaded with about 15 tons of paper. He had driven this route every other day for about 3 weeks, and had come from Chicago that morning. The road on which he traveled was being reconstructed and resurfaced from the junction of old US-12 and new US-12, and there was a sign west of the city of Kalamazoo at the junction of these two roads, reading, "Road under Construction." Beyond this junction is Snake hill, on which US-12 winds down grade from east to west, a distance of about two and one-half city blocks from top to bottom.

On this night there were no signs or lights at the top of Snake hill, but there were flares along both

sides of the highway.   Carter, driving at a reasonable rate of speed, was following an automobile which had been in front of him for some time.   He was about 60 feet behind this car and there was some dust in the air.   As he reached the bottom of the hill the car in front of the truck suddenly stopped and made a quick turn to the right.   Carter set his brakes and made a quick turn to the left in order to avoid striking this car.   Just beyond this point, defendant Globe Construction Company had made an excavation in the highway 38 inches deep and 67 feet long.   The testimony is conflicting as to whether or not there were any flares along the east edge of the excavation, but it is undisputed that there was a picket fence, similar to that used for snow fences, across the highway about 3 or 4 feet from the edge of the excavation.   Carter was unable to stop his equipment before it went into the excavation, and turned over.

Suit was brought by plaintiff Norwich Union Fire Insurance Society, Ltd., as assignee and subrogee of McNamara Motor Express, Inc., resulting in a judgment in favor of the insurance company in the sum of $708.74 for damages to the cargo, and a judgment in favor of the express company in the sum of $852.50, for damage to its equipment.

Defendant's motions for a judgment notwithstanding the verdict and for a new trial were denied by the trial court and it appeals on the sole ground that plaintiff express company's driver was guilty of contributory negligence as a matter of law.   In denying the several motions, the trial judge filed memoranda in which he said that the excavation in the pavement was not readily observable for a very great distance, and that the express company's driver did not turn out for the purpose of passing the vehicle ahead of him, but was confronted with

a sudden emergency; that he governed himself accordingly; attempted to avoid a collision with the vehicle that had stopped so suddenly ahead of him, and that, in pulling slightly to the left, was immediately confronted with the excavation without any earlier warning of it. Because of the weight of his vehicle and its momentum and his inability to turn to the right, he had no choice but to go ahead into the excavation.

The trial judge also commented upon the fact that because the flares had been there for some days and nights, Carter and others traveling the highway almost daily were familiar with the fact that it was under repair and might perhaps have assumed that the flares were there to mark the sides of the road, rather than to warn travelers of an "unexpected and suddenly created excavation of the entire pavement."

The trial judge concluded that Carter was not guilty of contributory negligence as a matter of law, but that his negligence, if any, was a question of fact for the jury. In passing upon the motion for a new trial, the trial judge concluded that:

"The jury apparently weighed the testimony of Harold Carter, driver of plaintiffs' truck, very carefully and, it seems to me, rendered the only just and true verdict possible on the whole record including his testimony. If I had been the trier of the facts I could not have found otherwise."

The trial judge also directed attention to the fact that, although Carter had made three or four round trips each week between Kalamazoo and Chicago during the progress of the road construction, the excavation had been made after he had passed over

that part of the highway on his return from Chicago. He stated that:

"This is not a case in which it satisfactorily appears that there was a proper barricade at a proper distance from the end of the excavation or other proper warning properly placed and readily discernible which a driver negligently failed to discover and to heed.

"It clearly appears from the testimony of Carter and other witnesses that the east end of the excavation at the foot of Snake hill was not reasonably discernible in the circumstances and conditions then present for sufficient distance to the east to afford travelers approaching it reasonable protection or to charge them with a want of due care if they failed to discover it in time to avoid driving into the excavation. The happening of this serious accident should surprise no one acquainted with the fact. In no respect am I able to find that Carter is subject to censure or failed to use reasonable care. As already stated, it cannot be said that he negligently failed to heed a warning of a danger that was clearly visible for a proper distance. It may more reasonably be said that he fell into a trap negligently placed by defendant's agents and employees."

Our examination of the testimony brings us to the same conclusion reached by the trial judge, *i.e.*, that Carter's negligence, if any, was a question of fact for the jury. *Martin* v. *J. A. Mercier Co.,* 255 Mich. 587 (78 A. L. R. 520), and *Bard* v. *Baker,* 283 Mich. 337.

The several judgments are affirmed, with costs to appellees.

Starr, Wiest, Butzel, Boyles, and Reid, JJ., concurred with Bushnell, J.

Sharpe, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice Bushnell "that Carter's

negligence, if any, was a question of fact for the jury."

Carter, the driver of plaintiff's tractor and trailer, was familiar with the road. He knew the road was under construction and that the shoulders of the road were being graded. He was following an automobile down Snake hill at a distance of 65 to 75 feet; was 500 feet to the east of the excavation when he first saw the lights on each corner of it; was travelling at the rate of 35 miles per hour; and could stop his tractor in a distance of 60 feet. Carter testified: "When I was 100 feet east of the flares I was about 60 feet from the car ahead and gaining on him. He was then between me and the flares. When he was about 25 feet from the hole I started passing him. * * * It was pretty dusty, but not foggy that night. There was dust along there but I don't know how far I drove into the dust cloud before I hit the fence." When bright his lights would show "about 190 feet."

Clarence W. Leedy, a witness produced by plaintiffs, testified: "I was employed by the Globe Construction Company. * * * The fence was between 3 and 4 feet from the end of the excavation. The fence was a picket fence, painted red. ' * * * I helped Mr. Rendel place his flares. He placed three flares across the road. Two right at the corners of his fence, back something like 8 or 10 feet, and one in the neighborhood of 50 or 60 feet right in the middle of the road. * * * The fence was clear across the pavement east of the hole. Mr. Rendel, I believe, was about 75 feet in front of the light that was in the center of the pavement, with a red flag and a white handkerchief tied to the end of it."

In *Thompson* v. *Southern Michigan Transportation Co.*, 261 Mich. 440, we said:

"It is well settled that it is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed it cannot be stopped within the distance that objects can be seen ahead. *Spencer* v. *Taylor,* 219 Mich. 110; *Holsaple* v. *Superintendents of Poor of Menominee County,* 232 Mich. 603; *Bowmaster* v. *William H. DePree Co.,* 252 Mich. 505.

" 'No person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.' 1 Comp. Laws 1929, § 4697. * * *

"It is not enough that a driver be able to begin to stop within the range of his vision or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. *Ruth* v. *Vroom,* 245 Mich. 88 (62 A. L. R. 1528); *Haney* v. *Troost,* 242 Mich. 693. Stress is placed upon the atmospheric conditions existing at the time of the accident. These conditions have been held not to change the rule. *Budnick* v. *Peterson,* 215 Mich. 678; *Haney* v. *Troost, supra; Lett* v. *Summerfield & Hecht,* 239 Mich. 699; *Elrich* v. *Schwaderer,* 251 Mich. 33."

In the case at bar plaintiffs' driver did not have such control of his truck and trailer as to stop within the assured clear distance ahead. (1 Comp. Laws 1929, § 4697, as amended by Act No. 318, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 4697, Stat. Ann. 1943 Cum. Supp. § 9.1565].) He knew the highway was under repair, yet he drove to within 25 feet of the hole before putting on his brakes, knowing that he could not stop within a distance of 60 feet. If he had made proper observations he would have seen the flares and the fence, also the

flagman 50 feet east of the hole. His failure to see and heed what was plainly to be seen precludes recovery.

The judgment should be reversed without a new trial. Defendant should recover costs.

NORTH, C. J., concurred with SHARPE, J.