No. 36,986
No. 37,002

WILLIAM H. GRAVES, JOHN GRAVES, DWIGHT GRAVES and LOWELL GRAVES, copartners doing business as Graves Truck Service, *Appellees* and *Cross-appellants*, v. THE NATIONAL MUTUAL CASUALTY COMPANY, an Oklahoma corporation, and W. E. RUPPELIUS, doing business as Winfield Transfer and Storage Company, *Appellants*.

No. 36,987

VICTOR GARDINIER, *Appellee*, v. THE NATIONAL MUTUAL CASUALTY COMPANY, an Oklahoma corporation, and W. E. RUPPELIUS, doing business as Winfield Transfer and Storage Company, *Appellants*.

(188 P. 2d 945)

Opinion filed January 24, 1948.

*W. S. Norris*, of Salina, argued the cause, and *G. A. Spencer*, of Salina, was with him on the briefs for the appellants in Nos. 36,986 and 36,987. *D. Arthur Walker*, of Arkansas City, argued the cause, and *William L. Cunningham* and *William E. Cunningham*, both of Arkansas City, were with him on the briefs for the appellee in No. 37,002.

*E. S. Hampton*, of Salina, argued the cause, and *B. I. Litowich, LaRue Royce* and *H. H. Dunham, Jr.*, all of Salina, were with him on the briefs for the appellees. *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook* and *Lawrence E. Curfman*, all of Wichita, were on the briefs for cross-appellants.

*W. L. Cunningham, D. Arthur Walker, William E. Cunningham* and *William R. Howard*, all of Arkansas City, as *amici curiae.*

The opinion of the court was delivered by

SMITH, J.: The first two of these appeals are from an order over-ruling defendant insurance company's demurrer to plaintiff's petition in each case. The defendants were the same in each case but with a different plaintiff. The third appeal is from an order of the trial court refusing to enjoin the defendant truck operator in the former two cases from carrying on an action in another county against one of the plaintiffs in the first two actions.

The actions involve a collision between two trucks, each one being operated as a common carrier, under certificates from the corporation commission. One of the actions is by the operators of a truck line. In their action they seek to recover for the damages to their truck. The other action is by the driver of the truck, the employee of the operators. In it he seeks to recover damages for personal injuries. The defendants in each one of the actions are the same, that is, an individual operating as a truck company and his insurance carrier. The defendant operator also had a certificate from the corporation commission.

The petitions each set out the circumstances of the collision and the relationship of the parties. We are not concerned with that here. The petitions each then contained the following allegations:

"On October 25, 1946, the defendant, W. E. Ruppelius, was the owner of a certificate of convenience and necessity theretofore duly issued by the Kansas Corporation Commission, authorizing his operation on the highways of Kansas as a motor common carrier for the transportation of household goods covering Motor Carrier Route No. 1344, and said defendant truck was on said highway at said time pursuant to said certificate or permit.

"At such time and place said truck was duly insured as required by G. S. 1935, 66-1,128 by policy No. CA 45138 issued by The National Mutual Casualty Company and approved by the Kansas Corporation Commission as liability insurance to protect and pay compensation for injuries to property resulting from the negligent operation of said defendant truck. Said insurance policy with its statutory endorsement thereon is not hereto attached for the reason that both defendants have duplicates thereof and plaintiffs do not have said original policy of insurance."

The collision occurred in Harvey county. Defendant Ruppelius resides in Cowley county and the plaintiffs in each action reside in Saline county. The actions were brought in Saline county.

Summons for Ruppelius, doing business as Winfield Transfer and Storage Company, was issued and directed to the sheriff of Cowley county. Service upon him was made by that officer. Summons was issued for the defendant, The National Mutual Casualty Company, directed to the commissioner of insurance, and was served upon that defendant by mail.

Defendant Ruppelius appeared specially and asked that service of the summons upon him in each case be quashed, first because he was not a resident of Saline county and could not under the circumstances of this case be summoned to answer an action filed in Saline county; second, because the defendant insurance company was a foreign corporation and had not been summoned in Saline county; and third, because the petition did not state a good cause of action against the insurance company and no cause of action having been stated against it, the district court had no jurisdiction of defendant Ruppelius upon whom service of summons was had in Cowley county. The defendant insurance company demurred to each petition on the ground they did not state a cause of action against it and in favor of plaintiff. The motions to quash and the demurrers to the petitions were overruled in each case. Hence these appeals.

We shall first consider the two appeals from the orders overruling the demurrers and the motions to quash.

The defendant carried a public liability policy on account of being a common carrier, pursuant to G. S. 1935, 66-1,128. That section provides as follows:

"No certificate or license shall be issued by the public service commission to any 'public motor carrier of property,' 'public motor carrier of passengers.' 'contract motor carrier of property or passengers' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by, the public service commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier. No other or additional bonds or licenses than those prescribed in this act shall be required of any motor carrier by any city or town or other agency of the state."

We considered this section in *Dunn v. Jones*, 143 Kan. 218, 53 P. 2d 918. There the action had been brought to recover from a carrier for damages resulting from a death alleged to have been caused by the negligent operation of a truck being operated by a common carrier. The operator was insured but the policy was in the form of an indemnity policy. The insurance company was named as one of the defendants. We held the statute required that a motor carrier have on file a policy indemnifying it against a condition of being liable, as distinguished from indemnifying it against ultimate established loss, resulting from final enforcement of liability; that such liability rested on the insurer from the time of the accident resulting in injury; that the obligation might be enforced by an action brought directly against the insurance company; and that the terms of the statute would be read into whatever type of policy was actually filed so that the obligation under it would be that provided by the statute. Ever since that decision in actions against carriers on account of personal injuries sustained from the operation of the carrier the insurance company has been made a party defendant along with the carrier.

The defendant insurance company realizes the force of this decision and does not question its soundness. It argues, however, that the policy should have been made a part of the petition by way of an exhibit or at least its terms should have been set out in the petition. It argues that on account of this lack the petition fails to state a cause of action. The insurance company argues that any

liability it may have springs from the terms of the policy and no cause of action may be stated against it without either attaching a copy of the policy or at least setting out its terms. It argues there is nothing in the petition as to the contractual limits of the policy or how much plaintiff seeks to recover from it.

What this court said in *Dunn v. Jones,* supra, disposes of this argument. At the outset, it should be noted that no motion to require plaintiff to make more definite and certain was leveled at this petition by either of the defendants. In the absence of such motion the petition will be given a liberal construction in favor of the plaintiff. (See *Bowersox v. Hall,* 73 Kan. 99, 84 Pac. 577.)

In *Dunn v. Jones,* supra, we decided amongst other things what the legislature meant when it provided that a common carrier must deposit a "liability insurance policy." We said:

"A liability insurance policy is one that indemnifies against the condition of being liable, and such a policy is to be distinguished from one which indemnifies against ultimate established loss, resulting from final enforcement of liability." (p. 223.)

We then pointed out that the purpose of the insurance was adequate protection to members of the public from negligent conduct of the motor vehicle operator. No doubt the policy itself consisted of a page or two, some of it in fine print. The legislature, however, described it in these words and we described it in half a dozen lines. The essentials are there—liability, public, protection. No matter what the terms of the policy the few lines we have pointed out are sufficient as far as a party who has been injured by the negligent operation of the carrier is concerned. The statutes provide that the amount of the policy must be "in a reasonable sum," "to adequately protect." Naturally the liability of the company is limited by the amount of the policy on file. However, this is a joint action against the operator of the truck line and the insurance company. As far as the judgment against the operator of the carrier is concerned it might conceivably be in a much larger amount than that named in the policy. The liability of the insurance company would still be only for the amount named in the policy. That does not mean, however, that a petition which does not state the amount of the policy is demurrable. All the elements of liability are stated when the plaintiff alleged the existence of a policy in conformance with the statute. We are unable to find where the defendant insurance company would be prejudiced by being compelled to answer such a petition.

The defendant insurance company argues that no cause of action can be stated in an action to enforce a liability under an insurance contract unless the terms of the contract are pleaded in sufficient detail to establish the fact that some liability does exist under the contract and the extent of it. When the plaintiff pleaded that there was a liability insurance policy issued pursuant to the statute it stated sufficient detail as to liability so that the defendant knew as much as was necessary just what its liability was. As to the limits of its liability, outside of the amount which of course is controlled by the policy and the limits of liability are the limits of the liability of the motor carrier in tort. That is the contingency against which the policy was given to safeguard the public.

The court was correct in overruling the demurrers of the defendant insurance company to the petitions.

There is a question as to whether the order of the trial court refusing to quash the summons on Ruppelius was appealable.

We shall consider it on the merits, however.

The collision occurred in Harvey county, plaintiffs all resided and the action was brought in Saline county. The defendant Ruppelius, the operator of the defendant motor carrier, lived in Cowley county. He was served by the sheriff of Cowley county in that county. Ruppelius and the insurance company were joint defendants. The insurance company was a foreign corporation and summons was issued for it directed to the commissioner of insurance and it was served by that official by mail. All this was as provided by statute. (See G. S. 1935, 60-509, also G. S. 1935, 40-218.) An action such as this may be commenced in the county in which the defendant or someone of the defendants may reside or may be summoned. Ruppelius argues that no cause of action was stated against the insurance company, hence the joining of it in a petition in which he was also a defendant did not bring him within the terms of the statute so that he could be sued in Saline county and service be had on him in Cowley county. Since we have held that the petitions did state a cause of action against the insurance company this argument of Ruppelius loses its force. The trial court was correct in overruling the motion of Ruppelius to quash the summons.

We shall now consider appeal number 37,002. On January 24, 1947, the two petitions we have just discussed were filed in the district court of Saline county. On January 27 Ruppelius was notified by the sheriff of the county of the commencement of the above actions.

On February 18, 1947, Ruppelius commenced an action in the district court of Cowley county against the Graves Truck Service and Gardinier, their driver, and the insurance carrier for Graves for damages growing out of the same collision.

As the matters then stood, there were two actions pending in Saline county and one in Cowley county for damages alleged to have been sustained in the same collision. The only difference was that the two plaintiffs in the Saline county action, together with the insurance carrier of one of them were defendants in the Cowley county action. We quite often have a case where the defendant files a cross petition claiming damages against the plaintiff at the same time when he files his answer. It is not often, however, that we have such a situation as this where one of the defendants named in the first action filed what in effect is his cross petition by beginning a separate action in another court and another county.

Counsel for the plaintiff truck operator in one of the Saline county actions filed in the action that had been commenced there a motion wherein he prayed that the defendant Ruppelius be enjoined from carrying on his action in the district court of Cowley county. To this motion he attached a copy of the petition in the Cowley county action. This motion was filed on the same day when the court in the Saline county action overruled the demurrers of the insurance company to the petitions and the motions of Ruppelius to quash the summons in the Saline county actions. A restraining order was issued by the district court of Saline county restraining Ruppelius from going ahead with his Cowley county action. This order was served upon Ruppelius.

Ruppelius appeared specially in the Saline county action and moved the court to strike the application for injunction from the files and to dissolve the restraining order on the ground that the district court of Saline county had no jurisdiction over him for the reasons set out in his motion to quash the summons in the original case and for the further reason that the district court of Saline county had no jurisdiction to enjoin the prosecution of an action in the district court of Cowley county of a court of competent jurisdiction, with jurisdiction of the parties, and on the further ground that the parties to the Cowley county action were not the same as those to the Saline county action because the Hawkeye Casualty Company and Victor Gardinier were parties to the Cowley county action and were not parties to the action of Graves v. Ruppelius

and the National Mutual Casualty Company, an Oklahoma corporation, while in the Saline county action the National Mutual Casualty Company and Martin E. Jarvis, as administrator of the estate of Enoch R. Stamper, who were not necessary parties to the Cowley county action, and the same cause of action sued upon by the plaintiffs in the Saline county action.

On the hearing to dissolve the restraining order and to strike from the files the application for an injunction Ruppelius filed an affidavit. In this affidavit he stated that in addition to suing the Graves Truck Service he sued as joint tort-feasors Gardinier, their driver, the Hawkeye Casualty Company, the insurance carrier for Graves, and obtained good service upon all of them; that the district court of Cowley county was the only court of competent jurisdiction which had acquired jurisdiction of the Hawkeye Casualty Company; that Harvey county, where the collision occurred, or Cowley county, where Ruppelius resided, were the only two counties where he could proceed and that to deny him the right to carry on the action in Cowley county would be to deny him the equal protection of the law, in violation of the fourteenth amendment to the federal constitution, and would be a denial of due process of law, in violation of section 18 of the bill of rights of the state.

He further stated in his affidavit that in these actions the court would not be asked to foreclose any liens; that the matters involved were of personal liability, only personal judgments were sought; that he was proceeding in good faith and the Cowley county action was not malicious or vexatious; that the district court of Cowley county first acquired jurisdiction of the Hawkeye Casualty Company, as provided by G. S. 1935, 40-218; that he could not bring the Hawkeye Casualty Company into the action in Saline county since that county was neither the county where the cause of action arose or where he resided and that complete and adequate relief could be afforded all parties in the Cowley county action and the district court of Saline county had no jurisdiction to enjoin Ruppelius from the lawful prosecution of his action.

The trial court heard this motion on May 3, 1947. The court found that in open court counsel for The Graves Truck Service and Victor Gardinier and the Hawkeye Casualty Company offered to enter their appearance as parties, and counsel for Ruppelius called the court's attention to the fact that Gardinier and the Hawkeye Casualty Company were not proper parties to the action.

The court on May 6, 1947, dissolved the restraining order and denied application for an injunction. This appeal is from that order. It was taken June 11, 1947.

This action of the trial court left the two actions in Saline county and the one action in Cowley county, all three, pending. Some additional events transpired in the Cowley county action. They will be noted now. It will be remembered this appeal is from an order of the district court of Saline county entered May 6, 1947. On June 9, 1947, the district court of Cowley county denied the application of Graves for an injunction and for an order staying proceedings in that case. No appeal was taken from that order. Sometime subsequent to this Graves filed an answer in the Cowley county case. Sometime later we stayed Ruppelius from further prosecuting his action in Cowley county pending this appeal. That is the situation at this time.

On account of the view we have taken on the merits of this cross-appeal we shall first consider the arguments made by cross-appellee Ruppelius on the cross-appeal. He argues first that to enjoin him from proceeding with the Cowley county action would be to deny him the right to sue the Hawkeye Casualty Company anywhere. He gets at the question this way. He argues first that G. S. 1935, 60-507, provides that an action against a foreign insurance company can only be brought in a county where the cause of action arose. That county in this case would be Harvey. No action at all was instituted in that county. He then points out that the Cowley county action was commenced under the provisions of G. S. 1935, 40-218, which provides that such an action may be brought in the county where the cause of action arose or in which the plaintiff may reside. He then points out that he resides in Cowley county, hence it was proper for him to commence the action against the Hawkeye Casualty Company in that county. He states that there are only two counties where he could commence an action against the Hawkeye Casualty Company, that is, Harvey, where the cause of action arose, or Cowley county, where the plaintiff resided. From these legal propositions he argues that since he could not commence an action against the Hawkeye Casualty Company in Saline county he could not file a cross petition in the action commenced against him by the Graves Truck Service and make the Hawkeye Casualty Company a party and enforce whatever cause of action he might have against it. He argues that in effect

such a holding would release Hawkeye from any liability at all to him.

The first answer to this argument is that counsel for Graves and Gardinier, the plaintiffs in the Saline county actions, and also counsel for the Hawkeye Casualty Company, in open court when the application for an injunction was being presented offered to enter the appearance of the Hawkeye Casualty Company and Gardinier, as parties to the action brought by Graves in Saline county. Ruppelius argues here that this was an unauthorized offer of counsel. However, the trial court in ruling on the application for injunction found that counsel for Graves did represent Gardinier and Hawkeye and that this offer was made by Graves and that counsel pointed out that the Hawkeye Casualty Company' nor Victor Gardinier were proper parties plaintiff to the action, were not named as defendants in it and there was nothing in the record as it then stood which would make them proper parties plaintiff or defendant. The trial court apparently did not rule on the offer of counsel to enter appearance but proceeded to deny the injunction and dismiss the restraining order. Clearly the offer of counsel to enter the appearance of Hawkeye and Gardinier was not unauthorized nor taken by the court to be so. Had this entry of appearance been permitted there is no reason why all the questions of liability of Graves and Hawkeye to Ruppelius could not have been adjudicated.

We shall lay aside for a moment the offer of counsel to enter the appearance of Gardinier and the Hawkeye Casualty Company. Graves was the plaintiff in the Saline county action. Ruppelius claimed a right of action against him arising out of the same collision that was the basis of the Graves' action. As we have held, Ruppelius was properly served in Saline county. There is no reason why Ruppelius could not have filed his cross petition against Graves in the Saline county action. The Hawkeye Casualty Company was liable to Ruppelius, if at all, on account of a liability policy it issued to Graves. They were both liable as joint tort feasors. The district court of Saline county had jurisdiction of Graves because he had brought his action there, which he had a right to do. Since the district court of Saline county had jurisdiction of one of the tort-feasors, the other tort-feasor was a proper party and could have been brought into the action on motion of either party. (See G. S. 1935, 60-509.)

Ruppelius next argues that the United States supreme court has settled the question. He relies almost wholly on *Kline v. Burke Constr. Co.*, 260 U. S. 226, 67 L. Ed. 226, 43 Sup. Ct. Rep. 79, 24 A. L. R. 1077. That action was brought in the federal court for breach of a paving contract. Later the defendant in the first action filed a suit in a state court on the same contract and joined the sureties on the performance bond. The construction company sought to enjoin the proceeding in the state court. The federal district court denied the injunction. The circuit court reversed and allowed the injunction. On appeal the United States supreme court reversed the circuit court and denied the injunction. In passing on the appeal the United States supreme court pointed out that the two courts while they had concurrent jurisdiction within the same territory, they did not exist in the same plane. The court pointed out that when one court had jurisdiction of a *"res"* that *res* was as much withdrawn from the judicial power of another court as though it had been carried physically into a different territorial sovereignty.

The court then proceeded to draw a distinction between actions *in personam* and actions *in rem* and held that where the action was *in personam* there was no objection to a subsequent action in another jurisdiction either before or after judgment, although the same issues were to be tried.

We are unable to attach the significance to this opinion claimed for it by Ruppelius. In the first place, a federal court was being asked to enjoin proceedings in a state court. Federal courts are limited in such matters by section 265 of the Judicial Code. That rule is as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

No such rule exists as to one court in this state enjoining parties properly before it from carrying on litigation in another state court of equal jurisdiction involving the same issues that are before it. We have held that a district court of this state had jurisdiction to enjoin parties properly before it from carrying on the same litigation in a court of like jurisdiction in another state. (See *Williams v. Payne,* 150 Kan. 462, 94 P. 2d 341.) In that case the action was for personal injuries. We said:

"And while it is true that in no transitory action sounding in tort commenced in another state have litigants prosecuting it been enjoined in this state, the lawbooks draw no distinction between actions in tort and other transitory actions." (p. 467.)

In the Burke opinion, *supra*, the United States supreme court quoted with approval from *Covell v. Heyman*, 111 U. S. 176, 28 L. Ed. 390, 4 Sup. Ct. Rep. 355. The quotation is in part as follows:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior." (p. 182.)

The ability of the court first acquiring jurisdiction over the parties being able to enjoin them from carrying on the same litigation in another district court of this state appears clearly from a mere statement of the proposition. All the parties necessary to a complete and final adjudication of the liability growing out of this collision between two trucks were before the district court of Saline county or might have been brought before it on proper application. One of the justices remarked after the facts had been stated on the oral presentation of this appeal: "How can both these cases go forward at the same time?" The question has never been answered. An irreconcilable conflict is certain to appear sooner or later.

Ruppelius next argues that the cross-appeal is from an order dissolving a restraining order and such an order is not appealable. The trial court had entered a restraining order on an *ex parte* application to preserve the status. Such is the recognized procedure. Then on proper notice the court on the same day heard the application of the plaintiff for an injunction and the motion of Ruppelius to dissolve the temporary restraining order. The journal entry recited that the trial court was denying the application for injunction and dissolving the restraining order. The notice of appeal mentions both orders. An order refusing to grant an injunction is appealable. (See G. S. 1935, 60-3302, *second*.)

Ruppelius next argues that the trial court was correct in refusing the injunction because the application for a restraining order was

not verified. He relies on G. S. 1935, 60-1103. That section provides as follows:

"The injunction may be granted at the time of commencing the action or at any time afterward before judgment by the district court or the judge thereof, upon its appearing satisfactorily to the court or judge by the affidavit of the plaintiff or his agent or attorney that the plaintiff is entitled thereto. In the absence of the judge of the district court from the county, or in case the judge of the district court is disqualified by interest or is prevented from acting by sickness, the probate judge may grant a restraining order, to be of the same effect as a like order made by the judge of the district court. The application for such restraining order must be verified by affidavit."

It is true the above section does provide that the application for a restraining order must be verified by affidavit. Had this failure to verify been called to the trial court's attention on a motion simply to dissolve the restraining order it is possible such lack might have been sufficient to warrant the trial court in dissolving it. However, at the same time when the motion to dissolve was heard the application for an injunction was heard. The trial court was put in possession of all the facts offered by either party. The entire situation was considered. Naturally when the trial court refused to allow an injunction the restraining order fell as a matter of course. The real hearing, however, was on the matter of denying or allowing an injunction.

Ruppelius next argues that cross-appellants are appealing from an order that is *res judicata*. In this argument they point out the proceedings in the Cowley county action where the trial court of Cowley county refused to stay proceedings in that court. He argues that no appeal was taken from that order; that it is a final adjudication of the matter we are considering. The order of the district court of Saline county from which the appeal was taken was entered on May 3, 1947. At that time all that had been filed in the Cowley county case was the petition. Nothing more was done in that action until June 9, 1947. The subsequent transactions in the Cowley county action were never called to the attention of the district court of Saline county. On consideration of the question of whether the district court of Saline county erred in entering its order refusing an injunction, we will not consider transactions in the other court taken subsequent to the entry of the order from which the appeal was taken and never called to the trial court's attention.

We shall now consider the arguments of cross-appellant. These actions were commenced in Saline county before the action in Cow-

ley county was commenced. As we have seen, it involves the same collision and is between the same parties, or all parties to the Cowley county action may be made parties to it. Ruppelius may have a complete and adequate remedy by filing a cross petition in the Saline county action.

The general rule has been stated many times by us.

In *Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369, we said:

"It is a principle of universal application, essential to the orderly administration of justice, in order to avoid conflict between tribunals of coequal authority, that the court first acquiring jurisdiction shall be allowed to pursue it to the end, to the exclusion of others; and that it will not permit its jurisdiction to be impaired or subverted by a resort to some other tribunal." (p. 488.)

See, also, *Bridgeport Machine Co. v. Arthur A. Beard, Inc.,* 135 Kan. 711, 11 P. 2d 990. There we said:

"Where a suit has been filed in a district court of competent jurisdiction praying for the appointment of a receiver, jurisdiction of that court begins with the filing of the petition, and from that time on no other court has jurisdiction over these parties and this property to entertain applications for the appointment of receivers or for any other purpose." (Syl. ¶ 2.)

(See *Schaefer v. Milner,* 156 Kan. 768, 137 P. 2d 156; also, *Bank Savings Life Ins. Co. v. Schroll,* 141 Kan. 442, 41 P. 2d 731.) While the foregoing action was to foreclose a mortgage the matters involved in the appeal concerned an action brought in Shawnee county to cancel a contract and a subsequent action on the contract brought in Hamilton county. That phase of the action was for personal liability. No *res* involved. We said:

"Upon the other ground urged, the motion to strike shows that before the Hamilton county action was filed, and long before Bray answered in that action, the same plaintiff had brought an action in Shawnee county, making Bray and others defendants, involving the rights of the respective parties under the identical contract pleaded by Bray in the Hamilton county action, the breach of which he alleges resulted in the damages he seeks to recover. Both were courts of general jurisdiction, having jurisdiction of the subject matter. Both acquired jurisdiction of the person of the defendant Bray. The Shawnee county court acquired such jurisdiction first in time, hence the controversy should have been tried in that court." (p. 445.)

We have already pointed out why in *Williams v. Payne,* supra, we would draw no distinction between actions for personal liability and those concerning a *res*. The district court should have allowed the injunction.

The judgment of the trial court in cases 36,986 and 36,987 is affirmed. The judgment of the trial court in case 37,002 is reversed.