No. 37,817

Wm. H. Graves, John Graves, Dwight Graves and Lowell Graves, copartners, doing business as Graves Truck Service, *Appellees*, v. The National Mutual Casualty Company, an Oklahoma corporation, *Appellant*, W. E. Ruppelius, doing business as Winfield Transfer and Storage Company, *Appellant*, Victor Gardinier, *Appellee*, the Hawkeye Casualty Company, *Appellee*, and Martin E. Jarvis, Administrator of the Estate of Enoch R. Stamper, deceased, *Appellant*.

(220 P. 2d 180)

Opinion filed July 8, 1950.

*Bernard Peterson*, of Newton, argued the cause, and *J. Rodney Stone*, of Newton, was with him on the briefs for the appellant, Martin E. Jarvis, Administrator of Estate of Enoch R. Stamper, Deceased.

*D. Arthur Walker,* of Arkansas City, argued the cause, and *W. L. Cunningham* and *Wm. E. Cunningham,* both of Arkansas City, were with him on the briefs for the appellant, W. E. Ruppelius.

W. S. Norris, of Salina, argued the cause, and was on the briefs for the appellant, National Mutual Casualty Company.

E. S. Hampton and H. G. Engleman, of Salina, argued the cause, and LaRue Royce, H. H. Dunham, Jr., and John Q. Royce, all of Salina, and Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, and Lawrence E. Curfman, all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This action involved the relative liability of the parties arising from a collision of two trucks about six miles south of Newton on U. S. Highway No. 81. One of the trucks was owned by a partnership doing business as Graves Truck Service. It consisted of a White tractor and an Omaha Standard semitrailer equipped for the hauling of livestock. It was empty and its total weight was about 16,000 pounds. It was being driven by Victor Gardinier, an employee of the Graves Truck Service, and engaged in its business. The insurance carrier was the Hawkeye Casualty Company of Iowa. The other truck was owned by W. E. Ruppelius of Winfield, doing business as the Winfield Transfer and Storage Company. It had a Chevrolet tractor with a Fruehauf semitrailer, was loaded with furniture, and its weight was about 28,000 pounds. It was being driven by Enoch R. Stamper, an employee of Ruppelius and engaged in his business. The insurance carrier was the National Mutual Casualty Company of Oklahoma. The owners of the respective trucks had proper certificates for the hauling of freight. The collision occurred about 4:30 a. m., October 26, 1946. At the place of the collision U. S. Highway 81 is a paved four-lane highway. The two east lanes are for northbound traffic and the two west lanes are for southbound traffic. They are separated by an unpaved strip about five feet wide. Both of the trucks involved were traveling north. The Ruppelius truck, traveling ahead of the Graves truck, had stopped on the highway without lights or flares and was struck by the Graves truck, the right front portion of the Graves truck striking the left rear portion of the loaded trailer of the Ruppelius truck, with the result that Stamper was so injured that he died while being taken to a hospital, Gardinier was seriously injured, and both trucks were damaged.

Stamper was a resident of Cowley county. Martin E. Jarvis was duly appointed administrator of his estate and he brought an action for the wrongful death of Stamper against the Hawkeye Casualty Company in the district court of Harvey county, where the collision

occurred. This was removed to the federal court, where a trial resulted in judgment for plaintiff, but a motion for a new trial was granted because of erroneous instructions.

In the meantime, and on January 24, 1947, the Graves Truck Service filed an action in the district court of Saline county against the National Mutual Casualty Company and Ruppelius for the damages to its truck, and on the same date Gardinier brought an action in the same court against the same defendants for personal injuries. Each of these actions was predicated upon the alleged negligence of the defendants and of Stamper. On February 18, 1947, Ruppelius brought an action in the district court of Cowley county against the Graves Truck Service, their insurer, the Hawkeye Casualty Company, and Gardinier, their driver, for damages to his truck and contents, predicated upon the alleged negligence of the defendants in that action. Naturally, the question arose as to whether the claims of the respective parties should be tried out in both courts or in only one of them. That controversy reached this court in Graves v. National Mutual Cas. Co., 164 Kan. 267, 188 P. 2d 945, and it was held that since the Saline county actions were first filed the entire matter should be tried out in that court. Following that decision the court in Saline county made an order that all the other parties interested should plead by answer and cross petition in the action brought in that court by the Graves Truck Service. Whereupon Graves Truck Service filed an amended petition, in which Jarvis, administrator, was named as one of the defendants. Gardinier dismissed the action he had brought in Saline county and filed his answer and cross petition in the case which had been brought by the Graves Truck Service, in which he sought damages for personal injuries against the defendants named in the Graves Truck Service action. Jarvis, as administrator of the estate of Stamper, dismissed his action in the federal court and filed an answer and cross petition in the suit brought by the Graves Truck Service in the Saline county court for the alleged wrongful death of Stamper. Ruppelius dismissed his action in the district court of Cowley county and filed an answer and cross petition in the suit brought by the Graves Truck Service in Saline county, in which he sought damages as in his original petition in Cowley county. Without detailing the pleadings it may be said that by cross petitions, answers and replies the issues were joined as between Graves Truck Service and Gardinier on the one side, seeking damages against

Ruppelius, his insurer, and Jarvis, as administrator; while the cross petitioners, Ruppelius and Jarvis, as administrator, on the other side, were seeking damages against the Graves Truck Service, its insurer, and Gardinier. When the case was called for trial counsel for the plaintiffs, Graves Truck Service and Gardinier, stated that they were not asking any judgment against Jarvis, as administrator, which would be a claim against the assets of Stamper's estate; that they were looking for recovery against the insurer of Ruppelius.

The case proceeded to trial, with the result that the jury returned a verdict in favor of the Graves Truck Service and against Ruppelius, his insurer, and Jarvis, administrator, for $3,500 and a separate verdict in favor of Gardinier and against the same defendants in the sum of $5,000. The jury also answered special questions as follows:

"Q. 1: Was it practical for Stamper to have parked said truck on the shoulder adjoining the slab on the east and completely off of the paved highway? A.: Yes.

"Q. 2: Was any fusee, warning light or flare placed by Stamper beside or at any distance in the rear of the Winfield Transfer and Storage Company truck while said truck was stopped or left standing on the pavement? A.: No.

"Q. 3: Were there any lights burning on the rear of the Winfield Transfer and Storage Company truck at the time of said collision? A.: No.

"Q. 4: If you answer the foregoing question in the affirmative, at what distance south of the Winfield Transfer and Storage Company truck could a driver ascertain that said truck was stopped and not moving? A.: (No Answer).

"Q. 5: Do you find that Stamper was guilty of any negligence which caused or contributed to the accident? A.: Yes.

"Q. 6: If you answer the foregoing question in the affirmative, then state of what the negligence of Stamper consisted. A:. Improper Parking.

"Q. 7: Do you find that Victor Gardinier was guilty of any negligence which caused or contributed to the accident? A.: No.

"Q. 8: If you answer the foregoing question in the affirmative, then state of what such negligence consisted. A.: None.

"Q. 9: Was the driver of the Graves truck tired and sleepy at the time of the collision? A.: No.

"Q. 10: State the distance the Graves truck was from the Ruppelius truck when Gardinier, the driver of the Graves truck, first observed the Ruppelius truck. A.: Appro. 70' feet.

"Q. 11: At the time of the collision, had Gardinier gone without sleep for a period of twenty-two hours? A.: No.

"Q. 12: Was the highway straight and practically level for a distance of 300 feet or more immediately south of the point of collision? A.: Yes.

"Q. 13: At what speed was the Graves truck traveling at the time of the collision? A.: 40 Miles.

"Q. 14: How far ahead of the Graves truck could its driver, Gardinier, see persons and vehicles with the bright lights of the Graves truck turned on? A. 500 feet.

"Q. 15: How far ahead of the Graves truck could its driver, Gardinier, see persons and vehicles with the dim lights of the Graves truck turned on? A. 125 feet.

"Q. 16: How many feet south of the point of collision was it to the top of the rise which some of the witnesses referred to as the crest of the hill? A. 1500 feet.

"Q. 17: Did Gardinier, the driver of the Graves truck, put on his dim lights at the top of the rise which some of the witnesses referred to as the crest of the hill? A.: Yes.

"Q. 18: If you answer the preceding question 'Yes,' then state if the driver of the Graves truck, Gardinier, continued to drive with his lights dim until he collided with the Ruppelius truck? A. Yes.

"Q. 19: If your answer to the preceding question is 'No,' then state how far the Graves truck was from the rear end of the Winfield trailer when he turned his lights on bright. A. (No Answer).

"Q. 20: Just prior to the collision was Gardinier driving at a rate of speed greater than was reasonable and prudent under the conditions then existing? A. No.

"Q. 21: At the time of the collision was Gardinier driving at such a rate of speed that he could not stop within the range of vision provided by his headlights? A. No.

"Q. 22: Was Gardinier driving the Graves truck at the time of the collision at such a rate of speed that he could not stop or turn aside to avoid hitting the Winfield trailer after he saw the same ahead of him? A. Yes.

"Q. 23: Was Gardinier keeping a proper lookout for vehicles ahead of him on the highway just prior to the collision? A. Yes.

"Q. 24: At the time of the collision did Gardinier have the Graves truck and trailer under proper control? A. Yes.

"Q. 25: Were the headlights on the Graves truck, being driven by Gardinier, so adjusted prior to the collision that Gardinier could stop the Graves truck within the distance that persons or vehicles ahead of him on the highway were disclosed by his headlights? A. Yes.

"Q. 26: Did the Graves truck and trailer, at the time of the collision, have a gross weight in excess of five thousand pounds? A. Yes."

Ruppelius, the National Mutual Casualty Company, and Jarvis, as administrator, filed separate motions to set aside the answers of the jury to certain of the special questions, also for judgment in their favor notwithstanding the general verdict, and also a motion for a new trial. These motions were all considered by the court and overruled and the court rendered judgment in harmony with the verdict. Ruppelius, his insurer, and Jarvis, administrator, have appealed.

Appellants joined in the abstract and briefs, also the appellees

joined in the counter abstract and briefs. They will be referred to as appellants or appellees except when there is some occasion to name a specific party.

Appellants contend the district court of Saline county had no jurisdiction to entertain a suit against Jarvis, administrator of the estate of Stamper, pending in the probate court of Cowley county; that the probate court of Cowley county had exclusive original jurisdiction to entertain claims against that estate. We think this principle has no application in the situation shown by the record in this case. Under our wrongful death statute (G. S. 1935, 60-3203) the administrator may sue for the wrongful death of the deceased for the benefit of the next of kin. If recovery is had the sum received by the administrator does not go into the personal estate of the decedent, but is distributed to the next of kin. Here the administrator first brought such an action in the district court of Harvey county, with results previously noted. When the Graves Truck Service and Gardinier first filed their actions in the district court of Saline county they did not make Jarvis, administrator, defendant. After our former decision (164 Kan. 267, 188 P. 2d 945), previously noted, and the venue for the trial of all claims growing out of the collision of the trucks was determined to be in Saline county, the Graves Truck Service filed an amended petition in which it named as defendants all other parties, including Jarvis, administrator, claiming damages as a result of the collision. Jarvis appeared in the action and filed an answer to plaintiffs' petition, consisting of a general denial, and filed a cross petition in which he set up a claim for damages for the alleged wrongful death of Stamper and sought recovery for the next of kin—not to enlarge the assets of the estate. He made no objection to the jurisdiction of the court. At the beginning of the trial counsel for appellees stated that they were seeking no judgment against Jarvis, administrator, to be paid from the estate of Stamper. Certainly the court had jurisdiction for the trial of the claim of Jarvis, administrator, under this cross petition. That jurisdiction, if the evidence would have warranted it, would have authorized a judgment in favor of Jarvis, administrator, for the benefit of the next of kin of Stamper; and also, if the evidence would not have justified such a recovery, would have authorized judgment against Jarvis, administrator, for the next of kin of Stamper. The National Mutual Casualty Company, the insurer of Ruppelius, was a party to the action. Its policy of insurance had

been set up in the pleadings and was shown in the evidence. Its liability was limited to $5,000 for the injury or death of one person. Gardinier's cross petition first asked for damages in the sum of $10,000, but at some time while the trial was in progress, or prior thereto, that had been amended so that Gardinier was asking for damages in the sum of $5,000 only. That is the amount of the verdict returned for Gardinier, hence in the verdict for Gardinier there was no excess above the amount of the liability of the insurer that could be charged against the estate of Stamper. We regard the verdict in favor of appellees and against Jarvis, administrator, as amounting to no more than a denial of the relief sought by Jarvis.

At the close of appellees' evidence the appellants demurred thereto upon the ground that it showed Gardinier to be guilty of contributory negligence as a matter of law. The demurrers were overruled. Appellants complain of that ruling. Briefly stated, the evidence disclosed the following facts: The collision occurred at a low place in the pavement near two cement culverts, not far apart. To the south there was an upgrade for about 1,500 feet, also to the north for perhaps 600 feet. Stamper was an experienced truck driver, employed by Ruppelius, who had him leave Winfield about five o'clock p. m. on October 25, with a truckload of furniture to be delivered in McPherson. His route took him through Wichita and north on U. S. 81. Apparently when he got to the place of the collision he stopped with his truck on the pavement instead of pulling it out on the shoulder to the east, which was twelve feet wide, and without putting out lights or flares. Gardinier was a truck driver for Graves Truck Service. He left Salina, driving a truck for them, the evening of October 25 with a truckload of eighteen head of cattle to be taken to the Wichita stockyards. His truck was equipped with Westinghouse air brakes, which were in good working order. It was well lighted and the driving lights were good. He had delivered the cattle and was starting to drive back to Salina. When he got to the crest on the highway about 1,500 feet south of the point of collision he met an oil transport truck going south. It had bright lights, which the driver dimmed, and Gardinier dimmed his lights. Not far behind it was a car with very bright lights which partially blinded Gardinier, who kept his lights dimmed. He did not see any lights on the Ruppelius truck. There were no flares out or lights of any kind about it. He testified that after he passed the car with the bright lights:

"I was so close to this other rig or this other truck that I couldn't see him, make out what it was, just like a big shadow, and I didn't have time to turn or stop. I set my air brakes and turned to miss, but that's the last I remember. I was hit and got my injuries."

That is about all the direct evidence there is about how the trucks collided. The Ruppelius truck was pushed forward about 84 feet. The truck Gardinier was driving went forward about 102 feet and stopped to the left of the other truck. Shortly thereafter—the exact time is not shown—a truck driver, driving south, heard a man "hollering" over toward one of the stopped trucks. He stopped his truck on the shoulder to the west of the pavement and went over to the nearest truck and found a man, who later proved to be Gardinier, fastened in some way under the front part of the tractor of the truck Gardinier had been driving. With truck jacks and the help of others he got the man out and laid him on the pavement by the side of the truck. Other passersby, who had stopped for a moment, went on to a telephone and called the sheriff at Newton. Perhaps other calls were made. Within perhaps twenty minutes an ambulance was there, also the sheriff's force and highway patrolmen. In the meantime the persons there looked for the man who had been in the other truck and found Stamper about 20 feet back of his truck, lying on the shoulder east of the pavement, with a blanket over him. Just how he got there is not disclosed. Presumably someone passing earlier than the truckers observed him in the highway and placed him there, and covered him. He was alive, but obviously seriously injured. He and Gardinier were taken to Newton in an ambulance. Stamper died before they reached the hospital. Witnesses who were about the scene soon after the collision saw no lights on the Ruppelius truck, or flares or fusees either way from it. Many photographs were taken and officers and others made their deductions as to how the collision occurred and gave testimony. We think the question of the contributory negligence of Gardinier was proper to be submitted to the jury.

Appellants contend that their motions for judgment on the answers to the special questions notwithstanding the general verdict should have been sustained. The rule is well settled that upon such a motion the answers to the special questions should be harmonized with each other and with the general verdict, if that can reasonably be done. In such a case the general verdict is set aside only when the answers to the special questions compel that result. Appellants lay great stress on the answer to question No. 22 to the effect that

Gardinier at the time of the collision was driving at such a rate of speed that he could not stop or turn aside without hitting the Ruppelius trailer after he saw it ahead of him. There was no reason for Gardinier to anticipate a truck standing on the highway without lights or flares having been put out. The court so told the jury in an instruction, which was not objected to. In the light of that and the answers to other questions we think it would have been improper for the court to have set aside the general verdict.

Appellants contend the court erred in not granting their motions for a new trial. Under that head they complain that the court did not give all the instructions requested. An examination of that question discloses that the court gave most of the instructions requested and those not given are not essential to the decision. The real question in such a case is whether the instructions given are proper and sufficient. Studying that matter, we think they were. Appellants complain of instruction No. 31. This was to the effect that one confronted with an emergency is not held to the same high degree of care as one who is not in that situation. Appellants contend the instruction was improper because an emergency was not pleaded in plaintiff's petition. It is true that word was not used, but the facts showing the emergency were alleged. Complaint is made of instruction No. 19 to the effect that if Stamper was guilty of any negligence which caused or directly contributed to the collision the appellants would not be entitled to recover. Instruction No. 20 given was the same as applied to Gardinier and the appellees; hence, if there was any error in one of the instructions it applied equally to the other. We think instruction No. 19 contained no reversible error.

Appellants contend the court erred in submitting special question No. 2 to the jury for the reason there was no evidence to support it. The point it not well taken. They also contend the court erred in not sustaining their respective motions to strike the answers returned by the jury to a number of the special questions upon the ground they were not sustained by the evidence or were contrary to the evidence. We have examined these contentions and find them to be without substantial merit. They further contend the answers to the special questions were so inconsistent with each other as to require a new trial. Examining this contention we find it not to be well taken. Lastly, appellants argue that the general verdicts and the answers to certain special questions were given under the in-

fluence of passion and prejudice. We find nothing in the record to sustain this view. Certainly no passion or prejudice was reflected in the amounts of the verdicts. If the verdict for Graves Truck Service had been for a thousand dollars more than it was there was evidence which would have sustained it. There is no suggestion that the verdict for Gardinier was excessive. He was seriously injured, with resulting damages thoroughly established by the evidence. There is no serious contention that Stamper was not negligent in stopping his truck on the pavement, without lights thereon or flares or fusees put out, unless there was some reasonable excuse therefor. Excuses were suggested by appellants. Whether they were sufficient were questions of fact. Upon the record before us the jury's findings of fact, approved by the trial court, are binding here.

We find no error in the record. The judgment of the trial court is affirmed.