WINBURN, Respondent, ·v. VANDER VORST et al.,
Appellants

(55 N. W.2d 609)

(File No. 9268. Opinion filed November 18, 1952)

Rehearing granted April 16, 1953

**Dwight Campbell & Philo Hall,** Aberdeen, for Appellants.

**Roger Campbell** and **Hiram King,** Aberdeen, for Respondent.

SICKEL, P. J. This is an action brought by Harold Winburn, as plaintiff, against Cliff Vander Vorst and Bernie Wolf, as partners, and Anton Ternes, their employee, as defendants, to recover damages resulting from a motor vehicle collision which occurred on the evening of October 9, 1950 in Brown county. The action was tried to a jury which returned a verdict for plaintiff in the sum of $5,000. Judgment was entered thereon and defendants appealed.

The only question presented on this appeal is whether the evidence was sufficient to justify the jury in finding that the negligence of defendant Ternes was the proximate cause of the collision, and that plaintiff was not guilty of contributory negligence more than slight.

Vander Vorst and Wolf were engaged in business at Britton and owned a 1939 International truck. On the date of the collision defendant Ternes was returning from North Dakota with his wife, in the truck which was loaded with household goods and other personal possessions. After passing through Houghton on State Highway Number 10 Ternes had light trouble. All the truck lights were out. He

stopped, replaced the fuse and proceeded eastward. After traveling about a quarter of a mile further the lights again went out and he stopped a second time, parking near the center of the highway. In the meantime plaintiff had left Houghton also traveling east in his passenger car, and at the same time two cars were traveling west toward Houghton. The first car was driven by William Mitchell, accompanied by his wife Ruth Mitchell, and the second was driven by Ora Sombke, accompanied by his wife Doretta Sombke. When Mitchell was within about a half mile of the truck he saw the truck lights go off and on a couple of times. He slowed down, and at about the time he passed the truck the truck lights went out. After driving three-quarters of a mile further westward Mitchell met and passed plaintiff's car. Mitchell estimated the speed of plaintiff's car at 40 or 50 miles an hour. Both drivers dimmed their lights as they approached each other. As Sombke proceeded westward he saw the plaintiff's car approaching and dimmed his lights. He did not see the truck in the highway until the crash occurred. At that time he was a distance of three light or telephone poles east of the place of the collision. He saw no lights of any kind on the truck, and saw no sign of an effort to warn travel approaching the truck from either direction. Plaintiff testified that he dimmed his lights to pass the Mitchell car, and as the Sombke car was also approaching from the east he left his lights on dim. He further testified that the lights of the Sombke car hindered his vision so that he could not see what was in the highway ahead of him; that if it had not been for those headlights he was sure he would have seen defendant Ternes's truck sooner. As it was he saw an object on the highway in his lane of travel from a distance of two to three hundred feet when he was driving at 45 miles per hour. He further testified that when he saw the object he took his foot off the accelerator to slow down. At a distance of 90 to 100 feet from the object he figured out that it was a truck and was not moving, and he applied his brakes, putting on all the brakes he had. If he had put on his brakes at two or three hundred feet back of the truck he would have been moving a lot slower when he collided with it. He further testified that there were no

lights or reflector lenses on defendant Ternes's truck, and there were no illuminating devices of any kind in the vicinity of the truck; that the color of the objects on the truck were much the color of the road; the color of wood, and that this color blended with the road; that if the truck had been equipped with reflector lights his headlights would have been reflected in them even though his lights were dimmed.

Viewed in the light most favorable to plaintiff the evidence shows:

a. That the Ternes's truck was not equipped with red reflectors located at the rear as required by SDC 44.0352, subd. 6;

b. The truck was not equipped with portable flares as provided by SDC 44.0353, and no flares were placed to the front and rear of the vehicle as required by SDC 44.0354;

c. Ternes left his vehicle standing in the main traveled portion of the highway although it was not disabled and when it was practical to place it out of danger as was done by others who visited the scene of the accident immediately afterwards. SDC 44.0324.

d. Ternes knew from the time the first fuse blew out and from the flickering of his lights that his wiring was defective and nevertheless proceeded on the highway with full knowledge of the danger involved;

e. Ternes made no effort to ascertain the position of the truck on the highway even in the lights of the two vehicles approaching from opposite directions, nor to warn these vehicles of danger although he had a flashlight in the cab of the truck at the time. Neither did he use the rearview mirror to ascertain whether any vehicle was approaching from the rear. His explanation was that household goods and clothes were carried in the cab, some held by Mrs. Ternes, and that they could not get out of the cab within one minute's time to warn approaching traffic. From the above evidence the negligence of Ternes was clearly established.

This brings us to the issue of plaintiff's contributory negligence. Appellants state in their brief: "* * * Plaintiff's conduct in driving toward the oncoming lights of the Sombke automobile with his lights depressed without seeing or knowing from having seen that the road was clear

or apparently clear and safe for the speed at which he was driving constituted as a matter of law contributory negligence which under the well established law in this state would preclude any recovery by plaintiff". Negligence is established as a matter of law when reasonable men could draw no other conclusion from the facts of the case.

Thus appellants invoke the rule of safety stated in the case of Pfleger v. Wilhelm, 65 S. D. 464, 274 N.W. 872, 873, as follows: "In the exercise of due care, one must at all times see, or know from having seen, that the road is clear or apparently clear, and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed". The jury was so instructed in this case. In support of this rule appellants also cite King v. Farmers Educational & Cooperative Oil Co., 72 S. D. 280, 33 N.W.2d 333, and the decisions of this court referred to in that opinion. On the basis of this rule it is argued that regardless of the fact that plaintiff violated no duty imposed upon him by statute and that he kept an efficient lookout he still was negligent for failure to drive at a speed which would enable him to stop within the range of his vision and before colliding with defendant Ternes's truck.

■■ Another rule referred to by this court in at least three different opinions is to the effect that the plaintiff had the right to assume that defendant Ternes, and all other persons traveling upon the highways, would obey the law of the road until plaintiff knew, or in the exercise of ordinary care should have known otherwise. Stammerjohan v. Sims, 72 S. D. 189, 31 N.W.2d 449, and cases cited. The jury was so instructed in this case, and the court further instructed the jury saying: "And in the absence of reasonable grounds to think otherwise, it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty by some other person". No exception was taken to this instruction and it is therefore the law of this case.

In the case of Graves v. National Mutual Casualty Co., 169 Kan. 547, 220 P.2d 180, 186, defendants' truck was traveling north at night and stopped on the highway without lights or flares. Plaintiffs' truck was also traveling north

and collided with defendants' truck. The right front end of defendants' truck struck the left rear of defendants' truck. Plaintiffs' vision was obstructed to some extent by the lights of a vehicle approaching from the opposite direction. The opinion states: "Appellants lay great stress on the answer to question No. 22 to the effect that Gardinier at the time of the collision was driving at such a rate of speed that he could not stop or turn aside without hitting the Ruppelius trailer after he saw it ahead of him. There was no reason for Gardinier [plaintiff] to anticipate a truck standing on the highway without lights or flares having been put out. The court so told the jury in an instruction, which was not objected to. In the light of that and the answers to the other questions we think it would have been improper for the court to have set aside the general verdict".

Under the above instructions plaintiff had the right to assume that there was no unlighted truck on the highway that night; that every truck on the highway would be equipped with red reflector lights located at the rear of the vehicle and visible at night for a distance of 500 feet; that no motor truck would be brought to a stop on the high-way at night without headlights, reflector lights and flares placed at front and rear at a distance of 100 feet, and to proceed on this assumption until he knew, or in the exercise of ordinary care should have known, otherwise.

Also, under the above instructions where the jury is justified in finding the defendant negligent, and when there are distracting circumstances, such as a vehicle approaching from the opposite direction at night with lights which interfere with the plaintiff's vision and plaintiff looks but does not see the obstacle standing on the highway until it is too late to avoid a collision, it is for the jury to say whether the defendants' negligence was the proximate cause of the accident, or whether plaintiff was guilty of contributory negligence for failure to use reasonable care in discovering the danger and avoiding the collision. Garrison v. City of Detroit, 270 Mich. 237, 258 N.W. 259; Bard v. Baker, 283 Mich. 337, 278 N.W. 88; Park v. Gaudio, 286 Mich. 133, 281 N.W. 565; Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761; Anno. 21 A.L.R.2d 135, § 19.

In the state of Michigan the rule of safety was statutory. In Garrison v. City of Detroit, supra, the court said: "It would convert a rule of safety into a rule of danger to hold that drivers in a city, subject to distractions caused by pedestrians and vehicles, must anticipate, at their peril, so unusual a thing as an unlighted traffic signal in the center of a street intersection. When such a device is maintained, the cited rule of safety is not applicable, but the question of the driver's negligence becomes an issue of fact under the circumstances".

In Bard v. Baker, supra, the supreme court of Michigan confirmed the rule announced in Garrison v. City of Detroit, supra. In applying that rule it was held: "In our opinion, plaintiff's driver should have seen defendants' lighted truck parked on its proper side of the road, but he had a right to assume that it was loaded and parked in compliance with the laws of the state of Michigan; and whether or not plaintiff's driver failed to see the protruding mats or failed to see them in time to avoid a collision with them presents a jury question". [283 Mich. 337, 278 N.W. 90.] Judgment for plaintiff was affirmed. Three of the justices dissented on the authority of Ruth v. Vroom, 245 Mich. 88, 222 N.W. 155, 62 A.L.R. 1528. So far as we can ascertain from the Michigan authorities the opinion in Bard v. Baker settled the question in that state.

In Park v. Gaudio, supra, it appeared that plaintiffs were driving toward Detroit when they ran into the rear of defendants' trailer truck which was parked on a three-lane highway and it was claimed without lights. Plaintiffs' driver testified that he was traveling at a speed of 45 to 50 miles per hour and observed two headlights in the center lane coming toward him; that he pulled over to the south (right) lane of the highway, dimmed his lights, touched the brake, and slowed down to 35 or 40 miles per hour; that with the lights dimmed he could see about 75 feet ahead. When he first saw the truck he was traveling 30 or 35 miles per hour and was 70 feet from it. He applied his brakes at a distance of 60 feet. His tires would not hold and his car started to skid in some mud on the pavement. He further testified that the approaching vehicle had bright lights which

impaired his vision; that as he neared defendants' truck he tried to drive between it and the approaching car, and collided with the truck. Defendants contend that the proximate cause of the accident was the failure of plaintiffs' driver to safely operate his car, and to operate it at such a rate of speed that he could stop within the assured clear distance ahead. It was held that an issue of fact was presented under the rule of safety statute, as to whether defendants were guilty of negligence which was the proximate cause of the accident and there was an issue of fact as to whether the driver of plaintiffs' car was guilty of contributory negligence. Judgment for plaintiffs was affirmed.

In the case of Lostegaard v. Bauer, supra, plaintiff was traveling at night on a good U. S. Highway. The truck had been disabled by burning out the rear wheel bearings and was left standing on the right side of the road without lights or warning of any kind. Plaintiff was driving at a speed of about 35 miles per hour with her lights dimmed to meet an oncoming car. She first saw defendants' truck at a distance of 75 feet whereupon she applied her brakes, and when she saw she could not stop she turned her car to the left to avoid hitting the truck. She found she could not miss the truck because of the oncoming car and the width of the road and crashed into the rear of it. Defendants contended that plaintiff did not have proper control of her car and was traveling too fast to be able to stop within the clear distance ahead. The opinion of the court states: "Possibly she could have stopped her car in that distance of 75 feet or successfully passed the truck if that parked truck had been the only circumstance facing her. In a situation of that kind a person's mental faculties and physical reactions cannot be expected to respond as quickly or as correctly as if there had been no distractions and time for deliberation". [51 N.W.2d 766]. The court concluded: "There were circumstances from which reasonable men might draw different conclusions. The question of the contributory negligence of the plaintiff was for the jury to determine".

 Plaintiff was driving on his own side of the road at a lawful speed. He dimmed the beams of his headlights downward on meeting the Mitchell car, and he kept them

in that position to meet the approaching Sombke car. This procedure was mandatory under SDC 44.0356. It is not claimed that the adjustment of plaintiff's lights failed to comply with the statute. The Sombke car approaching from the opposite direction with the lights which interfered with plaintiff's vision constituted a distracting circumstance. Plaintiff looked, but did not see defendant Ternes's unlighted truck until he was within 200 or 300 feet of it. Plaintiff assumed at that time that defendant Ternes's truck was moving, and there is no evidence to prove that he should have known otherwise at that time. After plaintiff had driven another 100 or 200 feet, which would consume two or three seconds of time at the speed employed, he discovered that the truck was standing in the highway without lights, reflectors or flares, and plaintiff immediately used all the means available in order to avoid a collision, but failed. The evidence was sufficient to justify the jury in finding that the plaintiff's negligence was not more than slight and that defendant Ternes's negligence was gross in comparision, within the meaning of the comparative negligence law. Pierson v. Jensen, 150 Neb. 86, 33 N.W.2d 462.

The judgment of the circuit court is affirmed.

ROBERTS and LEEDOM, JJ., concur.

RUDOLPH, J., concurs specially.

SMITH, J., dissents.

RUDOLPH, J. (concurring specially). Under the South Dakota holdings I believe plaintiff's contributory negligence was established. However, I do not believe we can say as a matter of law that this negligence was more than slight. Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623; Audiss v. Peter Kiewit Sons Co., 8 Cir., 190 F.2d 238.